**STATE of Minnesota, Respondent,**

v.

**Frederick T. LOCKHART, Appellant.**

**No. C6–85–376.**

Court of Appeals of Minnesota.

Oct. 29, 1985.

Review Denied Dec. 30, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Mollie G. Raskind, Deputy State Public Defender, Minneapolis, for appellant.

Heard, considered and decided by FORSBERG, P.J., and PARKER and FOLEY, JJ.

## OPINION

FORSBERG, Judge.

Appellant Frederick T. Lockhart was convicted of criminal sexual conduct in the second degree, Minn.Stat. § 609.343(c) (1984). He was also convicted of two misdemeanors, trespass, Minn.Stat. § 609.605

(1984), and assault in the fifth degree, Minn.Stat. § 609.224 (1984), as lesser offenses of burglary. His convictions arose out of an incident where he entered an apartment and assaulted a woman sleeping in bed. He argues on appeal that he made no sexual contact with the victim because she was under the bedding when he laid on top of her. He also contends the trespass conviction should be vacated, that the jury verdict forms were confusing denying him a fair trial, and that the trial court abused its discretion in refusing to depart dispositionally. We affirm but vacate the trespass conviction.

## FACTS

On the evening of January 21, 1984, the complainant was sleeping in bed in her Bloomington apartment. She shared the apartment (# 202) with three other roommates. Appellant, a 20 year old student, entered the apartment complex seeking directions to a party. He met one of complainant's roommates and her friend outside apartment # 108 and they agreed to let appellant use a phone in their apartment. Appellant was told to keep his voice down because someone was sleeping in another room. Appellant left the apartment after a brief telephone conversation.

Appellant returned to the apartment building. He went to # 202 and entered the apartment through the door which was unlocked. He entered the bedroom and observed a person sleeping. Appellant's and complainant's testimony differed at this point. Appellant testified he approached the bed, put his left knee on the bed, leaned down and then realized he was doing something wrong and left.

The complainant testified that she was wearing a flannel nightshirt and underpants and was awakened by a pillow being placed on her face. She tried to push the pillow away and observed a young man standing by her bed. The intruder then put his knee on the bed and climbed on top of her as she lay under the covers (bedsheet, blanket, quilt, and bedspread). The intruder got his legs between her legs and began thrusting into her pelvis. The complainant believed she would be raped or killed. In an attempt at deterring him, she told him she had asthma and herpes. He got up and ran out of the apartment.

The complainant retrieved a knife. She thought the incident may have been a nightmare and did not tell her roommates what happened when they returned home.

The next morning she answered a knock on the front door of the apartment and recognized the person as the intruder of the previous evening. The person was asking for a blond girl living there, explaining that he had been there the night before and may have left his gloves behind. When the complainant told him no gloves were there, the person asked about another blond girl but was told there was no one there matching the description. She then observed the visitor leave and noted the color of his car. She then told her roommates what happened the night before and they called the police. Appellant was subsequently arrested.

At appellant's trial he moved to dismiss criminal sexual conduct charges and objected to the court's instruction that the statutory definition of sexual contact relating to clothing included the bed coverings. Appellant was charged with attempted criminal sexual conduct in the first degree, criminal sexual conduct in the second degree, and two counts of burglary. He was convicted of criminal sexual conduct in the second degree and trespass and misdemeanor assault, the latter two being lesser offenses to the burglary charges. Appellant was psychologically evaluated in Hennepin County and by program staff at the Intensive Treatment Program for Sexual Aggressives at St. Peter State Hospital. The trial court refused appellant's request to depart dispositionally and place him on probation and imposed a 23-month sentence for the criminal sexual conduct conviction. No sentence was imposed for trespass and assault. The trial court recommended appellant be sent to the sexual offender program at the Lino Lakes Correctional Facility.

## ISSUES

1. Did the state prove a criminal sexual contact where the prosecution alleged that appellant was separated from the victim by layers of bed coverings?

2. Did the trial court err in instructing the jury that "clothing" included bed clothes?

3. Should appellant's criminal sexual conduct conviction be vacated because of his conviction for misdemeanor assault?

4. Should appellant's trespass conviction be vacated?

5. Were the jury verdict forms fundamentally unfair?

6. Did the trial court abuse its discretion in refusing to depart dispositionally?

## ANALYSIS

### I.

Minn.Stat. § 609.343(c) (1984) provides: Criminal Sexual Conduct in the Second Degree. A person is guilty of criminal sexual conduct in the second degree and may be sentenced to imprisonment for not more than 15 years * * * *if he engages in sexual contact with another person* and if any of the following circumstances exists:

(c) Circumstances existing at the time of the act cause the complainant to have a reasonable fear of imminent great bodily harm to the complainant, or another. [Emphasis added.]

Sexual contact is defined in Minn.Stat. § 609.341, subd. 11 (1984), which states:

Subd. 11. "Sexual contact" includes any of the following acts committed without the complainant's consent, for the purpose of satisfying the actor's sexual or aggressive impulses, except in those cases where consent is not a defense:

(i) The intentional touching by the actor of the complainant's intimate parts, or

(ii) The touching by the complainant of the actor's, the complainant's, or another's intimate parts effected by coercion or the use of a position of authority, or

by inducement if the complainant is under 13 years of age or mentally defective, or

(iii) The touching by another of the complainant's intimate parts effected by coercion or the use of a position of authority, or

(iv) *In any of the cases above, of the clothing covering the immediate area of the intimate parts.* [Emphasis added.]

Appellant's argument is that assuming the State's version of the events, no criminal sexual conduct offense was committed because there was no sexual contact. The complainant was in bed dressed in her night clothes and on top of her was a sheet, blanket, quilt and bedspread. According to appellant, even if it was true that he laid down on top of her over the bedding with his legs between her legs, thrusting his pelvis into her pelvis, the only offense committed was a misdemeanor assault.

We do not agree. Appellant defines "clothing" as "wearing apparel" without citing any authority other than the general principle about construing criminal statutes narrowly. "Clothing" is defined as:

1. Garments in general; clothes; dress; raiment.

2. A covering.

*　　*　　*　　*　　*　　*

Webster's New Universal Unabridged Dictionary (2d ed. 1983). "Clothes" is defined as:

1. Covering for the human body; articles, usually of cloth, designed to cover, protect, or adorn the body; dress; vestments; vesture.

2. The covering of a bed; bed clothes.

*Id.* Bedsheets, blankets, quilts, bedspreads do cover the body when a person is lying under the covers. The legislature did not use the term "wearing apparel" or "garments," clearly terms which reflect items worn on a person. Rather, it used the term "clothing," a broader term and one which specifically includes bed coverings under standard definitions.

Under appellant's interpretation, a victim dressed for winter wearing many layers of garments and a heavy parka coat would be treated differently from a victim on a hot summer night wearing no apparel and covered only by a bedsheet. The assailant, committing the same acts that the State alleged were committed in this case, would clearly be guilty of criminal sexual conduct in the second degree in the first example because of the sexual contact with the clothing. In the second example, under appellant's theory the assailant would not be guilty of the offense. Such a result is absurd and we cannot interpret the statute in such a fashion. Minn.Stat. § 645.17(1) (1984). Thus, we hold that "clothing" under Minn.Stat. § 609.341, subd. 11 includes bed clothes and bed coverings.

## II. ·

Having determined that sexual contact may include bed clothes and bed coverings, we reject appellant's argument that the trial court erred in instructing the jury that "the presence of bed clothes in this case falls within the purview of clothing for the purpose of this statute." This instruction was proper.

## III.

Appellant contends that since the element of "sexual contact" is missing, the criminal sexual conduct in the second degree conviction must be vacated where he was also convicted of misdemeanor assault. Inasmuch as we earlier rejected the appellant's contention that the "contact" was missing, appellant's argument must fail. We note that it does not necessarily follow that the verdict of misdemeanor assault precludes appellant's conviction for criminal sexual conduct.

## IV.

Appellant was charged with alternative provisions in the burglary statute, Minn.Stat. § 609.582 (1984), for entering a building without consent and with intent to commit a crime under subd. 1(a) where the building is a dwelling and another person not an accomplice is present in it and subd. 1(c) where the burglar assaults a person within the building. The jury returned verdicts of guilty on the lesser offenses of assault and trespass. Appellant contends that inasmuch as he could only have been convicted of one burglary conviction, under Minn.Stat. § 609.04 (1984) he cannot be convicted of both assault and trespass as lesser offenses of each burglary charge. See State v. Orscanin, 266 N.W.2d 880, 882 (Minn.1978). We agree with appellant's general proposition. In this case the jury verdict forms do not indicate whether appellant was convicted of both assault and trespass as lesser offenses of one burglary subsection or of each burglary subsection. Since the forms are confusing in this regard, fairness suggests that appellant be given the benefit of the doubt and thus we vacate appellant's trespass conviction. Appellant does not contest the validity of the assault conviction and it remains valid.

## V.

Raising an argument for the first time on appeal, appellant claims the jury verdict forms were unfair in that they were "interlocking" and implied appellant was guilty of some offense. The verdict forms (Forms 6–10 are cited as improper) are as follows:

1. *Guilty* of Attempted Crim Sex 1st deg.

2. *Not Guilty* of Attempted Crim. Sex 1st deg.

3. *Guilty* of Crim Sex 2nd deg.

4. *Not Guilty* of Crim. Sex 2nd deg.

5. *Guilty* of Burglary of Dwelling intending to Commit an Assault and Committing an Assault under 609.582,1(c).

6. *Not Guilty* of Burglary under 609.-582,1(c) but Guilty of Burglary of an Occupied Dwelling Intending to Commit Assault under 609.582,1(a).

7. *Not Guilty* of Burglary under either 609.582,1(c) or 609.582,1(a), but Guilty of Assault and Trespass.

8. *Not Guilty* of Burglary under 609.-582,1(c) or 609.582,1(a) and *Not Guilty* of Assault, but Guilty of Trespass.

9. *Not Guilty* of Burglary under 609.-582,1(c) or 609.582,1(a) and *Not Guilty* of Trespass, but Guilty of Assault.

10. *Not Guilty* of Burglary, Assault, or Trespass.

We agree that the verdict forms used have the potential for abuse. The forms should not have combined crimes. However, there is no indication the jury in this case was confused or misled. There is no indication the jury returned with any questions and there is no indication the jury verdict itself was somehow inconsistent. In addition, appellant never objected to the verdict format and waived his right to raise this on appeal. *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983).

## VI.

■ Appellant contends the trial court erred in refusing to depart dispositionally. He argues that a report from treatment staff at the St. Peter State Hospital, issued in response to a court order for evaluation of appellant, did not recommend long term treatment. He also points to several social factors which indicate he is amenable to probation—a stable, religious, family background, past work for the police department, and the fact that he is a 20 year old first offender without even a juvenile infraction.

The I.T.P.S.A. report from St. Peter recommended that appellant be placed "in an environment where his behavior could be monitored, possibly in jail, with Huber law allowance for employment and/or school, and that he receive outpatient treatment at the University of Minnesota's Program in Human Sexuality." The report clearly foresaw the need for some confinement of appellant. Further, appellant's actions terrified the victim—she felt she had been raped and believed she would be killed. Even if this were a one-time mistake on the part of appellant, we cannot say the trial court abused its discretion in imposing the presumptive guideline sentence. *State v.*

*Kindem*, 313 N.W.2d 6 (Minn.1981); *State v. Olson*, 359 N.W.2d 53 (Minn.Ct.App. 1984).

### DECISION

Appellant was properly convicted of criminal sexual conduct in the second degree because "sexual contact" can include touching the immediate area of the intimate parts through bed clothes and bed coverings. There is no basis to vacate appellant's criminal sexual conduct conviction. Appellant's trespass conviction must be vacated pursuant to Minn.Stat. § 609.04, because he cannot be convicted for two lesser offenses of two burglary subsections when only one act was committed. While the jury verdict forms used here have potential for confusion, appellant is not entitled to a new trial as he failed to demonstrate prejudice and failed to object to the use of the questionable forms. Finally, the trial court did not abuse its discretion in sentencing appellant to 23 months imprisonment, the presumptive sentence under the Minnesota Sentencing Guidelines.

Affirmed as modified.