**Bradley W. JABLONSKI, Respondent,**

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Appellant.**

No. C5–87–82.

Supreme Court of Minnesota.

July 10, 1987.

---

Eric J. Magnuson and Mary C. Cade, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Erich J. Russell, Minneapolis, for respondent.

KELLEY, Justice.

Respondent Bradley Jablonski, a resident in the same household as his father and also a named insured in his own policy of automobile insurance, in this action against his father's automobile insurer, Mutual Service Casualty Insurance Company (MSC), seeks reformation of his father's two MSC automobile insurance policies by imposing underinsured motorist coverage into each of them by operation of Minn. Stat. § 65B.49, subd. 6 (1978) (repealed, 1980 Minn.Laws, ch. 539, § 7).[1] The trial court denied MSC's motion for summary judgment, but certified "the questions presented * * * are important and doubtful." The trial court failed to formulate the question he deemed to be "important and doubtful."[2] Absent such guidance, we frame the question posed as follows:

May a named insured's resident relative recover underinsured motorist insurance benefits under the named insured's policy into which underinsured coverage has been

---

1. The procedural history is somewhat more complex than stated in the facts in the text. Bradley Jablonski was identified by name in an automobile insurance policy issued to him by MSC. That policy likewise did not provide underinsured motorist coverage. In count one of his complaint against MSC, he asked that this policy be "reformed" by reading into the policy underinsured motorist coverage by operation of law because, allegedly, MSC failed to follow Minn.Stat. § 65B.49, subd. 6 (1978). That count was not the subject of pretrial summary judgment motions and is still pending for trial in the trial court.

In count two of his complaint Bradley sought not only to reform his father's two automobile policies to include underinsured motorist coverage by operation of law but he also sought optional coverages of medical expense benefits and loss of wage benefits. Originally one district court judge granted MSC's motion for sum-

mary judgment dismissing count two in its entirety. Subsequently, that order was vacated by another district court judge, who thereupon granted partial summary judgment dismissing Bradley's claims for medical benefits and loss of wages, but who denied MSC's motion for summary judgment on the claim seeking reformation of Bradley's father's policies to have underinsured motorist coverage "read into" those policies. In denying MSC's summary judgment motion, the trial court certified that issue as important and doubtful. The case is before us for resolution of the certified but unstated question.

2. As we recently observed, Minn.R.Civ.App.P. 103.03(h) (permitting an appeal from an order which denies a motion for summary judgment provided the trial court certifies that the question presented is important and doubtful) impliedly mandates that the trial judge formulate the question to be answered. *Farmers & Merchants*

imposed by operation of law even though the resident relative is identified by name in a contract for a plan of reparation security complying with Minn.Stat. §§ 65B.41–65B.71 (1978)? The effect of the trial court's denial of MSC's summary judgment motion was to answer the question in the affirmative. We answer the certified question in the negative, and reverse.

In 1978 while riding as a passenger in an automobile, Bradley Jablonski sustained severe and disabling injuries. The driver's insurer paid to Bradley the driver's liability insurance limits. The payments to Bradley, however, were grossly insufficient to compensate him for his catastrophic-type injuries.

At the time of this accident, although Bradley resided in the home of his father, he did own his own automobile. That automobile was insured by an MSC policy in which Bradley was identified by name, but the policy did not provide underinsured motorist coverage. On the accident date two automobile insurance policies likewise issued by MSC to Bernard Jablonski, Bradley's father, were in effect. Neither of Bernard's policies contained underinsured motorist coverage.

Plaintiff Bradley commenced this declaratory judgment action to reform all three policies by inclusion of underinsured motorist coverage. In count one of his complaint Bradley seeks reformation of his own policy to include the underinsured motorist coverage; in count two of the complaint he seeks reformation of each of his father's two policies to have imposed underinsured

motorist coverage by operation of law. Each count alleges that at the inception of each policy period, MSC had failed to make the offer of underinsured motorist coverage then mandated by Minn.Stat. § 65B.49, subd. 6 (1978).

Appellant MSC moved for summary judgment on count two of the complaint. It contends that (1) Bradley Jablonski seeks the wrong remedy in asking for reformation of his father's policies; (2) the correct legal remedy, assuming that MSC cannot establish that the statutorily mandated offer of underinsured motorist coverage was offered to Bernard Jablonski, is imposition of underinsured coverage into the policies by operation of law, in which case the statute's provisions regarding coverage and exclusions govern rather than any language in the policy which may appear to be broader or more restrictive than the statutory language; and (3) that the statutory language in Minn.Stat. § 65B.43, subd. 5 (1978) explicitly excludes Bradley from successfully claiming underinsured coverage under his father's policies.

■ Initially we note our agreement with MSC's first contention. Notwithstanding respondent Jablonski has denominated the relief sought in both the trial court and here as reformation, his own pleadings actually demonstrate that the relief sought is to have underinsured motorist coverage imposed upon the policies by operation of law. Indeed, we have held that to be the proper procedure. For example, we held in *Holman v. All Nations*

---

*State Bank of Pierz v. Bosshart,* 400 N.W.2d 739, 740 n. 2 (Minn.1987). The practice of omitting the formulated certified question appears to be on the increase. Counsel and the courts are advised that such omission in the future may well result in an appellate court's refusal to accept the defective certification.

Moreover, trial courts appear to be concentrating more on the "doubtful" aspects of the question rather than the "important" aspects. Rule 103.03(h) was designed neither to be a substitute for the normal appeal process, nor to present to the appellate court a hypothetical question nor to secure an advisory opinion. *See e.g., Thompson v. State,* 284 Minn. 274, 277, 170 N.W.2d 101, 103 (1969); *Rude v. Rude,* 283

Minn. 524, 525, 166 N.W.2d 719 (1969). Likewise if the question is either hypothetical or moot, an appellate court will decline to answer it. *See e.g., Staples v. Zinn,* 302 Minn. 149, 223 N.W.2d 415 (1974). Though proper resolution of the instant case may correctly be characterized as "doubtful," its "importance" is subject to more question. Even though we recognize this to be a "borderline" case, having accepted the certification we proceed with our opinion. Future trial court certifications under Minn.R. App.P. 103.03(h) may, however, be subjected to closer scrutiny before acceptance for review.

*Ins. Co.*, 288 N.W.2d 244 (Minn.1980), that when an insurer has not established that an adequate offer of coverage as mandated by statute has been made, the coverage will be imposed upon the policy by operation of law. *See also League Gen. Ins. Co. v. Tvedt*, 317 N.W.2d 40 (Minn.1982); *Kuchenmeister v. Illinois Farmers Ins. Co.*, 310 N.W.2d 86 (Minn.1981). This result ensues without regard to the true intention of the parties to the insurance contract. To the contrary, reformation contemplates alteration or amendment of the policy language to reflect the true intent of the parties at the time of its inception. *See, e.g., Glaser v. Alexander*, 247 Minn. 130, 76 N.W.2d 682 (1956). In this case respondent makes no contention that reformation is necessary to reflect the intent of the parties existing at the time of the issuance of the policy. Here, the parties had no intent either way concerning inclusion of underinsured motorist coverage in the policies because, respondent claims, it was neither offered by MSC nor considered by either Jablonski. Therefore, it appears that what is really sought in count two of the complaint is imposition of the claimed coverage by operation of law. However, since this is patently apparent on the face of the complaint, respondent's failure to correctly denominate the relief sought is not fatal. *Lucas v. Medical Arts Bldg. Co.*, 207 Minn. 380, 291 N.W. 892 (1940). *See also* Minn.R.Civ.P. 8.06.

Appellant MSC next contends that following determination that an insurer has failed to make an adequate offer of underinsured motorist coverage so as to result in its imposition upon the policies by operation of law, the coverage so imposed, and any exclusions relative thereto, is governed by statutory language exclusive of any policy language in the insurer's standard underinsured motorist clause that may be in conflict therewith. Thus, appellant asserts, as a matter of law, Bradley would be unable to successfully claim any underinsured motorist coverage that might be imposed upon his father's policies by operation of law because Bradley would be excluded from realizing the benefits of such coverage by the language of the No-Fault Act itself.

In resisting that contention, respondent would have us focus on the language of MSC's standard underinsured motorist clause. He contends that when coverage is imposed by operation of law the language employed by the insurer in its standard underinsurance clause should apply. Since, he claims, the language employed by MSC in its standard policy coverage operates to exclude more persons from the status of being a policy "insured" than does the statutory language in Minn.Stat. § 65B.43, subd. 5 (1978),[3] respondent contends the overly broad exclusion is void. Therefore, he argues, no valid exclusion exists, and it follows that he would be an "insured" entitled to underinsured motorist coverage imposed upon his father's two policies.

■ This court addressed essentially the identical issue raised by these contentions in *Beukhof v. State Farm Automobile Insurance Company*, 371 N.W.2d 538 (Minn. 1985). Beukhof argued that since the terms of the insurer's standard underinsured motorist clause was broader than the statute, he should be afforded underinsured motorist coverage under the policy— in effect the identical argument being advanced by respondent in the instant case. In rejecting Beukhof's argument, we held that when "coverage is to be imposed by statute, the statute's provision should govern, exclusive of the policy." 371 N.W.2d at 542. We then noted that to accept Beukhof's contention would be to "force upon the insurance company something that is

---

**3.** The definition of "relative" applicable to the "owned vehicle" exclusion in MSC's policy reads: "a relative of the named insured who is a resident of the same household, provided neither he nor his spouse owns a private passenger automobile * * *." This clause fails to "track" with statutory language imposing the additional requirement that the relative not be identified by name as an insured in a policy for a plan of reparation security.

not present in the statute." *Id.*[4] Contrary to respondent's contention, this was not *obiter dicta.* The holding and the reasoning supporting it appear to be sound. We, therefore, reaffirm them and hold that when underinsured motorist coverage is imposed by operation of law, the scope of the coverage is to be governed by Minn. Stat. §§ 65B.41–65B.71 (1978).

We next examine the Minnesota No-Fault Act (Minn.Stat. §§ 65B.41–65B.71) (1978) to ascertain whether Bradley Jablonski would possess the status of an "insured" if the court, by operation of law, imposed underinsured motorist coverage into his father's policies. Insofar as applicable, Minn.Stat. § 65B.43, subd. 5 (1978), the statute in effect at the time of Bradley Jablonski's accident, defined "insured" as follows:

"Insured" means an insured under a plan of reparation security as provided by sections 65B.41 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured:

(1) a spouse,

(2) other relative of a named insured,

(3) * * * [5]

Under the statute, for Bradley to qualify as an "insured" he must have resided in the same household as the named insured and he must not have been identified by name as an insured in any other contract for a plan of reparation security complying with Minn.Stat. §§ 65B.41–65B.71 (1978). The parties agree that at the time of the acci-

dent Bradley was residing in the same household with his father. Clearly, he was in fact identified by name as an insured in a contract for a plan of reparation security. The only question is whether that contract complied with Minn.Stat. §§ 65B.41–65B.71 (1978). If at trial, MSC establishes that, in fact, adequate offers of underinsured motorist coverage had been made to Bernard, but that he had opted to reject such coverage, Bradley's claim in count two would obviously fail. However, if MSC fails to establish adequate offers, underinsured motorist coverage would be imposed as a matter of law upon each of Bernard's policies. Only in this latter scenario would Bradley possibly be entitled to underinsured motorist benefits as an insured under his father's policies. But he would only be so entitled if he met the definitional requirement to qualify as an insured under Minn.Stat. § 65B.43, subd. 5 (1978), to-wit, that he not be identified by name in any other contract for a plan of reparation security complying with the No-Fault Act. Since admittedly he is identified by name in his own policy of insurance, he is excluded from underinsured motorist coverage under his father's policies unless his personal automobile policy fails to meet the requirements of the No-Fault Act. No matter what the outcome of the suit against MSC in count one of his complaint, he will be "covered by a contract for a plan of reparation security complying with sections 65B.41 to 65B.71" If MSC establishes he was offered underinsured coverage and declined, the policy still would comply with Minn.Stat. §§ 65B.41–65B.71 (1978), because the mandatory offer had been made. Minn.Stat. §§ 65B.41–65B.71 (1978) contains no requirement that the mandatory offer must be accepted for the plan of reparation to be in compliance. The same

4. Respondent's reliance on *Burgraff v. Aetna Life & Casualty Company,* 346 N.W.2d 627 (Minn.1984), is misplaced. That case did not involve the imposition of underinsured motorist coverage upon Mr. Burgraff's policy. That coverage had been offered by Aetna, accepted by Burgraff and paid for. Under those circumstances the question in *Burgraff* was whether Aetna could limit the statutory class of insureds by its policy language. We held it could not. That poses a different question than the issue in the instant case, whether if coverage exists at all, it exists only as the result of the imposition by operation of law.

5. The current version of the statute, Minn.Stat. § 65B.43, subd. 5 (1986), is identical.

result follows if MSC fails to establish an adequate offer: the coverage will be imposed by operation of law into Bradley's own policy in which he is identified by name. His policy, therefore, will comply with the No-Fault Act. Consequently, by reason of Minn.Stat. § 65B.43, subd. 5 (1978), Bradley will be excluded from insured status under his father's policies.

Therefore, we conclude the certified question must be answered in the negative. As a result, as a matter of law, underinsured motorist coverage is unavailable to respondent Bradley Jablonski under his father's MSC policies. Accordingly, we remand for entry of judgment on respondent's second cause of action.

SIMONETT, J., took no part in the consideration or decision of this case.