LEAMINGTON CO., petitioner,
Appellant,

v.

NONPROFITS' INS. ASSOCIATION,
an Interinsurance Exchange,
Respondent.

No. C9–98–2056.

Supreme Court of Minnesota.

Aug. 3, 2000.

Paul C. Peterson, William L. Davidson, David J. Retzlaff, Lind, Jensen & Sullivan, P.A., Minneapolis, for appellant.

Charles J. Noel, Jennifer Kjos Fackler, Charles J. Noel & Associates, P.A., St. Paul, Patricia E. Kuderer, Hoff, Barry & Kuderer, P.A., Eden Praire, for respondent.

Jeffrey J. Lindquist, Pustorino, Tilton & Parrington, P.A., Minneapolis, for amicus curiae Insurance Fed. of Minnesota.

Paul A. Sortland, Sortland Law Office, Minneapolis, for amicus curiae Minnesota Trial Lawyers Association.

## OPINION

### PAUL H. ANDERSON, Justice.

This matter comes to us on appeal from a district court grant of summary judgment for Nonprofits' Insurance Association (NIA). NIA moved for summary judgment, arguing that Leamington Co.'s breach of contract action was barred because Leamington failed to submit a sworn proof of loss 60 days after one was requested by NIA. NIA also argued that because Leamington was not a named insured on its policy, Leamington had no standing to sue. The Minnesota Court of Appeals affirmed the district court, holding that Leamington's failure to submit the proof of loss within 60 days barred it from any recovery. The court of appeals did not decide whether Leamington had standing to sue under the policy because the issue was rendered moot by the court's holding on the proof of loss issue. We reverse, holding that Leamington's action is not barred by its failure to submit the proof of loss within 60 days of NIA's request. Further, because we conclude that there are material issues of fact regarding Leamington's standing under the policy, we reverse the district court's conclusion

on this issue and remand for further proceedings.

Appellant, Leamington Co., a Minnesota corporation, owns the Francis Drake Building (Drake) in Minneapolis. From 1983 until May 1996, Leamington leased the Drake to People Serving People, Inc. (PSP), a Minnesota nonprofit corporation. PSP used the 144-room Drake as a homeless shelter. A 10-year lease agreement, signed in 1990, required PSP to maintain liability and hazard loss insurance equal to the value of the Drake. The lease also required that Leamington be named in the insurance policy as the owner-insured.

From May 1994 until May 1996, insurance on the Drake was provided under annual policies issued by respondent NIA to PSP. During the times relevant to this appeal, PSP purchased these policies through independent agent Acordia of Minnesota and its predecessors.[1] Leamington introduced evidence on summary judgment indicating that Acordia and the predecessor agents were aware of Leamington's lease requirement that it be listed as an owner-insured and the 1994–1995 policy listing Leamington as a loss payee. Leamington also produced evidence that Acordia had been provided with a copy of the lease between PSP and Leamington and that Acordia was aware that the primary reason for PSP's purchase of the insurance policy was to comply with its lease obligations.

When NIA's policy with PSP was renewed in 1995 and again in 1996, Leamington was not named as a loss-payee or as an additional insured on the policy. However, in August 1996, after discovering the damage to the Drake, Acordia became aware of the omission of Leamington on the policies and notified NIA. NIA promptly issued endorsements listing Leamington as an additional insured for 1994, 1995, and 1996. NIA now claims that these changes

1. At various points in time relevant to this matter, NIA was represented by Berkely Risk Services (1994–1995), RBW, Inc. (1995), and finally Acordia (1996).

were made without the knowledge of PSP and at the sole request of Leamington. NIA also states that the endorsements issued were only for the liability coverage and not for the hazard loss coverage. Leamington asserts that its omission from the policy was a mutual mistake and that both PSP and NIA, through its agents, intended that Leamington be listed as an additional insured.

Meanwhile, problems developed in the business relationship between Leamington and PSP and in May 1996, PSP vacated the Drake. When it repossessed and inspected the Drake, Leamington discovered water damage to the ceilings and walls of the rooms and corridors, which probably was caused by thawing of snow or ice during December 1995. Leamington also discovered extensive vandalism and property destruction throughout the building attributed by Leamington to PSP's guests and invitees.[2] Leamington offered evidence to show that in July 1996, it notified Acordia of its potential claim. Leamington also provided NIA with written notice of its claim on August 30, 1996.

On November 26, 1996, NIA sent a reservation of rights letter to Leamington. In the letter, NIA also requested a sworn proof of loss and included a standard proof of loss form. Leamington completed and signed the sworn proof of loss and mailed it to NIA on February 11, 1997—77 days after NIA's request.

Leamington received no response from NIA after it mailed the proof of loss. In August 1997, Leamington commenced an action in Hennepin County District Court alleging that NIA breached its policy and seeking to reform the policy to include Leamington as an additional insured. Among other allegations and denials in its answer, NIA denied that Leamington was entitled to coverage on the grounds that it was not a named insured on the policy. Additionally, NIA argued that, in any case,

because the proof of loss was not provided within 60 days of NIA's request, Leamington was barred from recovery on the policy.

NIA moved for summary judgment claiming (1) that by failing to provide the sworn proof of loss within 60 days of NIA's request, Leamington was barred from recovery, and (2) that Leamington was a stranger to the policy with no standing to assert a reformation claim. The district court agreed with NIA and granted it summary judgment, concluding that Leamington's failure to provide the proof of loss within 60 days after NIA's request barred it from recovery under the policy and under the Minnesota Standard Fire Insurance Policy. *See* Minn.Stat. § 65A.01, subd. 3 (1998). The court further stated that Leamington could not have obtained reformation of the policy because it was not a party to the original contract and that the contracting parties did not agree to reformation.

Leamington appealed. The court of appeals, in an unpublished decision, affirmed the district court's ruling that Leamington's failure to provide the proof of loss within 60 days barred it from recovery on the policy. *See Leamington Co. v. Nonprofits' Ins. Ass'n,* C9-98-2056, 1999 WL 561951, at *3 (Minn.App. July 28, 1999). The court of appeals did not decide whether Leamington had standing to reform the policy because the court concluded that this issue was rendered moot. *See id.* at *4. We accepted review on two issues: first, whether Leamington's failure to timely submit a sworn proof of loss barred it from any recovery on the policy and second, whether the district court erred in finding that Leamington had no standing to bring an action to reform the policy.

## I.

Summary judgment is appropriate when a district court determines that

2. Leamington settled its claims against PSP in a separate action. As a condition of the settlement, Leamington was granted exclusive rights to pursue all insurance claims for real property damage to the Drake.

"there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. When reviewing a grant of summary judgment, an appellate court must consider (1) whether there are any genuine issues of material fact, and (2) whether the lower court erred in its application of the law. *See Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). When, as in this case, the material facts are not in dispute, we review de novo the lower court's application of the law. *See Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). Additionally, the interpretation of an insurance policy is a question of law that we review do novo. *See Metropolitan Property & Cas. Ins. Co. & Affiliates v. Miller*, 589 N.W.2d 297, 299 (Minn. 1999).

The court of appeals, relying on its earlier decision in *Nathe Bros., Inc. v. American Nat'l Fire Ins. Co.*, 597 N.W.2d 587, 590 (Minn.App.1999), concluded that Leamington's failure to timely submit a sworn proof of loss effected a complete bar to any recovery by Leamington on the policy. *See Leamington*, 1999 WL 561951,

at *2–3. In *Nathe*, the court of appeals held that timely submission of the proof of loss is a condition precedent to any liability on the part of an insurer and therefore the failure to timely submit a proof of loss operates as a bar to recovery on the policy. 597 N.W.2d at 590.

■ We reversed the court of appeals' holding in *Nathe* in a decision considered and released contemporaneously with this decision. *See generally Nathe Brothers, Inc. v. American Nat'l Fire Ins. Co.*, 615 N.W.2d 341 (Minn.2000). In *Nathe*, we held that under Minnesota's Standard Fire Insurance Policy (Minn.Stat. § 65A.01 (1998)), the timely submission of a proof of loss is not a condition precedent to recovery on a policy. *See id.*, at 349. Therefore, under the Standard Fire Insurance Policy, the failure to timely submit a proof of loss will not automatically operate as a bar to recovery. *See id.*

■ On appeal, NIA asserts, and Leamington agrees, that its policy terms comply with and are essentially the same as those contained in the Standard Fire Insurance ˙ Policy.[3] *See generally* Minn.

---

**3.** We see a noteworthy difference between the insurance policy we addressed in *Nathe* and NIA's policy; and, while not dispositive of the question before us, this difference warrants comment. In *Nathe*, it was uncontested that the proof of loss and maintenance of suit requirements of the insurer's policy and the Standard Fire Insurance Policy were essentially the same. *See id.*, at 349. The Standard Fire Insurance Policy contains a maintenance of suit clause stating that no action may be maintained on the policy "unless all the requirements of this policy have been complied with." Minn.Stat. § 65A.01, subd. 3 (1998). By its plain language, this clause applies to "all requirements of this policy," including the requirement that a sworn proof of loss be provided to the insurer within 60 days of the loss. *Id.*

NIA claims that its policy's proof of loss and maintenance of suit requirements are also identical with the Standard Fire Insurance Policy. We do not agree. NIA's policy does contain both a proof of loss requirement and a maintenance of suit clause. The proof of loss requirement provides that an insured

must submit a signed and sworn proof of loss within 60 days of NIA's request. This requirement is contained in the policy's Building and Personal Property Coverage Form. However, the policy's maintenance of suit clause is found in its Commercial Property Conditions section. This section specifically *refers to itself* throughout this section as "this Coverage Part".

The Commercial Property Conditions section of NIA's policy contains no proof of loss requirement and appears to limit the operation of its maintenance of suit clause only to those terms found in "this Coverage Part." This clause specifically states "No one may bring a legal action against us under *this Coverage Part*, unless * * * [t]here has been full compliance with all of the terms of *this Coverage Part* * * *." (Emphasis added.) The plain language of the policy manifests an intent to apply only the maintenance of suit clause to the terms contained in the Commercial Property Conditions section, not the Building and Personal Property Coverage Form.

NIA argues that when an insured fails to timely submit a proof of loss, its policy's proof

Stat. § 65A.01, subd. 3. As we explained in *Nathe,* under the Standard Fire Insurance Policy, an insured's failure to timely submit a sworn proof of loss statement does not automatically operate as a complete bar to recovery. *Nathe,* 615 N.W.2d at 349. Neither party argues that Leamington's 17–day delay in submitting the proof of loss caused prejudice to NIA. Accordingly, we hold that Leamington's delay in submitting its proof of loss does not bar its recovery in this case.

## II.

Having concluded that Leamington is not barred from bringing an action because of its delay in submitting its proof of loss, we must now address the propriety of the district court's conclusion that Leamington cannot sue to reform this policy. Leamington argues that the court erred in granting summary judgment because there are material issues of fact as to whether NIA's omission of Leamington as an additional insured on its policy with PSP was a mutual mistake, thus justifying reformation of the policy to include Leamington. The court, in a brief statement, concluded that because Leamington was a "stranger" to this insurance policy, it had no standing to assert a reformation claim.

 An insurance policy, or any written instrument, may be reformed by the courts if it can be proved that: "(1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party." *Nichols v. Shelard Nat'l Bank,* 294 N.W.2d 730, 734 (Minn.1980). These facts must be established by evidence that "is clear and consistent, un-

equivocal and convincing." *Id.* The purpose of reformation is not to create a new policy; rather, it is to bring the written instrument into conformity with the intent of the contracting parties. *See Jablonski v. Mutual Serv. Cas. Ins. Co.,* 408 N.W.2d 854, 857 (Minn.1987).

 NIA asserts that we should not reach the question of whether Leamington may bring an action for reformation of this policy because Leamington has no standing to bring such an action. However, the facts in the record indicate that evidence provided by Leamington on summary judgment was sufficient to raise a material issue of fact and, if believed, could establish Leamington as an intended additional insured on the policy with standing to seek reformation.

Leamington referred the district court to the lease agreement between Leamington and PSP that stated as one of its terms that PSP procure and maintain hazard loss insurance on the Drake sufficient to cover the value of the property and improvements and that Leamington be named as an owner-insured on the policy. Leamington provided evidence to show that a copy of this lease was given to NIA's agents. Further, Leamington points to the fact that it was listed as a loss-payee on the 1994–95 policy. Leamington also introduced evidence to show that when Acordia, NIA's agent, discovered the omission, Acordia promptly requested endorsements naming Leamington as an additional insured and that NIA issued those requested endorsements.

 NIA also maintains that because both it and PSP object to the reformation, Leamington cannot seek reformation. However, NIA cites no authority for this proposition, nor has our review of applicable case law uncovered any. Certainly, PSP's and NIA's objections are evidence

---

of loss and maintenance of suit terms effect a forfeiture. However, terms of forfeiture regarding notice and proof of loss conditions are strictly construed against forfeiture and we will not read a forfeiture provision into an

insurance policy when, as here, the policy language does not plainly manifest that intent. *See Sterling State Bank v. Virginia Sur. Co.,* 285 Minn. 348, 353–54, 173 N.W.2d 342, 346 (1969).

supporting their claim that naming Leamington as an additional insured on this policy was not the intent of the parties at the forming of this agreement, but the objections are not determinative of that issue.[4]

Finally, NIA and the dissent argue that Leamington lacks standing to even bring this claim because it was not named on the policy, referring to Leamington as a "stranger to the contract." This argument misses the main point of Leamington's claim. Leamington is not a "stranger" to this policy; it asserts that by its contractual relation with PSP it was an intended beneficiary of this policy. If Leamington establishes that when entering into this policy PSP and NIA intended Leamington to be named on the policy, it would clearly have standing to bring an action to enforce the policy. *See* Minn. R. Civ. P. 17.01; *see, e.g., Snicker v. Byers,* 176 Minn. 541, 546–47, 224 N.W. 152, 154 (1929) (holding that intended beneficiary of a bond was a real party in interest with rights to sue to enforce the bond).

If NIA's and the dissent's arguments were correct, then an omitted party could never bring an action to reform a policy because it will inevitably not be named on the policy. Permitting Leamington standing to assert its reformation claim does not, as the dissent asserts, "open [ ] the door" to a "stranger to the contract"; rather, it does not improperly close the door to parties who have a legitimate reformation claim. Additionally, while not argued below, the record indicates that Leamington may have rights as an intended third-party beneficiary of the policy. *See Cretex Cos. v. Construction Leaders, Inc.,* 342 N.W.2d 135, 139 (Minn.1984)

(adopting Restatement (Second) of Contracts § 302 (1979) rule on third-party beneficiaries).

For the foregoing reasons, we conclude that Leamington has proffered evidence sufficient to raise genuine issues of material fact regarding its claim that there was a valid agreement between PSP and NIA that included Leamington as a named insured on the policy, that the written policy failed to accurately reflect that intent, and that this failure was due to the mutual mistakes of PSP and NIA. While NIA has proffered evidence to the contrary, we hold that because there is evidence here sufficient to raise genuine issues of material fact, summary judgment was inappropriate.

In sum, we conclude that Leamington's delay in submitting its proof of loss does not bar it from recovery on this policy. We also conclude that Leamington has raised material issues of fact on its claim to reform the policy to add it as an additional insured. Accordingly, we hold that the court of appeals erred in its decision on the proof of loss requirement and that the district court erred in granting NIA summary judgment on Leamington's reformation claim. We reverse and remand this matter to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

PAGE, J., took no part in the consideration or decision of this case.

STRINGER, Justice (dissenting).

I respectfully dissent. I agree with the majority that Leamington's failure to submit a proof of loss within 60 days is not a

---

4. The dissent argues that because NIA and PSP object to the reformation, Leamington's belief that it should have been named on the policy is the mistake in this case, not a mutual mistake by NIA and PSP. While this is one possible determination from the facts presented, it is just that—a factual determination—and therefore inappropriate on summary judgment. Leamington has adduced evidence sufficient to raise a material question of fact as to whether there was a mutual mistake in this case. We make no comment on whether they will be able to prevail on this issue. As we noted earlier, the standard of proof for reformation claims is high. However, Leamington does not have to prove its case to withstand summary judgment; it need only demonstrate "a genuine issue as to any material fact." Minn. R. Civ. P. 56.03.

condition precedent to recovery and does not necessarily operate as a complete bar to recovery. However, I disagree with the majority's conclusion that a material issue of fact remains as to whether the omission of Leamington as an additional insured on the policy was a mutual mistake.

The majority concludes that Leamington raises a genuine issue of material fact regarding its inclusion in the policy under the test provided in *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980), because Leamington presented evidence indicating that the parties intended to include it as an additional insured. But what the parties intended is of no importance if the claimant seeking reformation is not one of the parties. *See, e.g.,* 13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 37:1, at 5 (4th ed. 2000) ("Under the traditional common-law rule, only parties in privity of contract could sue on the contract * * *. * * * Even today, courts recite talismanically * * * that 'strangers to a contract' have no rights under the contract")[1]. That is the situation here. Leamington's evidence is that one of NIA's agents had a copy of the lease agreement between Leamington and PSP requiring that Leamington be named as an owner-insured on the policy and that Leamington was listed as a loss-payee on the 1994–95 policy. Additionally, Leamington argues that after discovering the omission, Acordia requested endorsements naming Leamington as an additional insured.

While all this may be true, the answer is that it does not matter. The only parties to the contract, NIA and PSP, are not before the court seeking reformation and in fact now object to the reformation: NIA claims that the earlier endorsements listing Leamington as an additional insured were made without PSP's knowledge and at the sole request of Leamington. Far from revealing a mutu-

al mistake, it appears that Leamington may have mistakenly believed it was included as an additional insured, but NIA and PSP–the actual parties to the contract–were not mistaken and reached a different understanding entirely. Where NIA and PSP, as parties to the contract, agree that Leamington was not accidentally omitted, it defies common sense to permit Leamington, as a stranger to the contract, to introduce evidence that the omission was a mistake. The majority has opened the door for what can only be perceived as the dreadful prospect of a stranger to a contract having standing to claim that the contract should be reformed to benefit the stranger when the parties to the contract expressed no such intention.

With respect to the majority's comment that Leamington may have rights as an intended third-party beneficiary of the policy, I agree that this issue was not argued below and thus should not be addressed here. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (limiting review to issues raised in the district court).

---

**1.** Williston goes on to note that exceptions to the general rule have developed in the case of third party beneficiaries. *See* 13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 37:1, at 7 (4th ed.2000).