# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2554

_____

|  |  |  |
|---|---|---|
| Employers Mutual Casualty Company, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Wendland & Utz, Ltd., | * | of Minnesota. |
| | * | |
| Defendant - Appellant, | * | |
| | * | |
| Terry Lynn Djonne; Wen-Po | * | |
| Daniel Su; Man-Mei Nadine Su, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Frederick ('Fritz') Banfield; | * | |
| Heartman Agency, Inc., | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: March 14, 2003

Filed: December 17, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Wendland & Utz seeks reversal of a summary judgment entered in favor of its insurer, Employers Mutual Casualty Company ("EMC"). An attorney at the law firm of Wendland & Utz, while driving his own vehicle to pick up a witness, struck and seriously injured a pedestrian, Dr. Wen-Po Daniel Su ("Dr. Su").[1] EMC denied coverage because the policy it issued to Wendland & Utz does not provide coverage for automobile accidents, even those occurring during the scope of employment. EMC sought a declaratory judgment that no coverage exists under the policy. In response, Wendland & Utz, sought to reform the insurance policy, or in the alternative, show that EMC negligently or intentionally misrepresented the terms of the policy to the agent and thus should be estopped from refusing to honor the terms as represented. The district court found that no genuine issues of fact exist on Wendland & Utz's claim because the law firm never contacted EMC about providing coverage for Wendland & Utz's employee-owned vehicles. We agree and affirm the district court's grant of summary judgment.

## I. *Facts*

This coverage dispute began after Terry Lynn Djonne ("Djonne"), an associate of Wendland & Utz, struck and injured Dr. Su when Djonne lost control of his vehicle while on company business. Dr. Su and his wife, Man-Mei Nadine Su, asserted claims for personal injury against Djonne personally and Wendland & Utz on the basis of respondeat superior.

At the time of the accident, EMC insured Wendland & Utz under a Business Owners' Insurance Policy ("BOP").[2] Craig Wendland, on behalf of Wendland & Utz,

---

[1] Wendland & Utz settled the case with Dr. Su for $1,000,000 the limitation of liability in its policy with EMC. The errors-and-omissions insurance carrier for the agency that issued the EMC policy to Wendland & Utz supplied the money for the settlement in a loan arrangement.

[2] A BOP combines insurance coverage from many sources into a single,

-2-

purchased the EMC policy from the Heartman Agency–an independent insurance agency. Wendland discussed the firm's insurance needs with Heartman's agent, Frederick Banfield. Wendland testified that he was aware that Wendland employees drove their own vehicles on personal business and would annually update Banfield regarding any significant changes to the firm's property and personnel activities. Wendland would then ask Banfield "Are we fully covered? . . . Is there anything we should be covered for?" According to Wendland, Banfield responded "no." As a result of these annual reviews and assurances, Wendland understood that the EMC policy covered firm employees for any employment related activities, including driving a vehicle.

Banfield and Wendland's accounts differ. Banfield remembered a series of conversations that Wendland did not recall. Banfield testified that, sometime around 1995, he and Wendland met to discuss coverages under the EMC policy. Wendland inquired if the policy would provide liability coverage for a loss such as a secretary driving her own vehicle on a business errand for the law firm. Banfield said he responded that he did not know, and would have to call EMC to find out if this type of coverage was included in its package policy. According to Banfield, he immediately called the EMC underwriting department and posed the same hypothetical to one of the underwriters (either Roland Troup or Karen Anderson), and was told that the EMC policy did indeed provide such coverage. Banfield testified that he then called Wendland and relayed these assurances; Wendland did not recall receiving this phone call. Also, both underwriters–Troup and Anderson–vehemently deny that they made any assurances to Banfield.

---

comprehensive package. It commonly provides protection for buildings, equipment, inventory, and computers. Some BOPs also insure against losses owing to personal injury, lost business income, dishonesty, and liability.

The BOP policy purchased by Wendland contains a specific "Aircraft, Auto, and Watercraft" exclusion. The provision expressly excludes coverage for bodily injury arising out of the ownership, maintenance, or use of a motor vehicle.[3] It is undisputed that because Dr. Su's injury claim is based on damages flowing from an automobile accident, the motor vehicle exclusion in the BOP applies.

EMC brought the controversy to federal court, seeking declaratory judgment that its policy excluded coverage for Wendland & Utz's liability to Dr. Su. Wendland & Utz counterclaimed for reformation and misrepresentation (both tort and reformation). In response, EMC moved for summary judgment. The district court granted the motion, dismissing all of Wendland & Utz's claims.

## II. *Summary Judgment*

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence–and the inferences that may be reasonably drawn from the evidence–in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). However, the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank,* 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth

---

[3] EMC does provide separate automobile coverage. An insured may purchase either a commercial automobile policy or "non-owned" vehicle coverage.

specific facts in the record showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

A. <em>Reformation</em>

Minnesota law governs review of Wendland & Utz's claim that–based on mutual mistake–the contract should be reformed to provide coverage for the loss.[4] Under Minnesota law, the courts may reform an insurance policy, or any written agreement, if it can be proved that:

> (1) there was a valid agreement between the parties expressing their real intentions;
>
> (2) the written instrument failed to express the real intentions of the parties; and
>
> (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Leamington Co. v. Nonprofits' Ins. Ass'n.*, 615 N.W.2d 349, 354 (Minn. 2000) (quoting *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980)). Additionally, "[a] party seeking reformation of a contract has an 'onerous' burden of proof." *Wood Goods Galore, Inc. v. Reinsurance Ass'n of Minnesota*, 478 N.W.2d 205, 209 (Minn. Ct. App. 1991) (quoting *Tollefson v. American Family Ins. Co.*, 226 N.W.2d 280, 284 (Minn. 1974)). Where reformation is based upon a claimed mutual mistake, the evidence "must be clear, precise, and convincing." *Wood Goods, Inc.*, 478 N.W.2d at 209.

---

[4] Wendland & Utz also makes a claim that the contract should be reformed based on misrepresentation. This argument is without merit and no discussion is warranted.

The parties disagree as to the proof requirement–to establish each of the reformation elements–under Minnesota law. EMC relies on authority stating that Minnesota law requires these elements be established by evidence that is "clear and consistent, unequivocal and convincing." *Leamington Co. v. Nonprofits' Ins. Ass'n*, 615 N.W.2d 349, 354 (Minn. 2000) (quoting *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980)). On the other hand, Wendland & Utz argues that the Minnesota Supreme Court reduced the standard of proof from clear and convincing to the ordinary civil burden–preponderance of the evidence.

In support of its position, Wendland & Utz relies on a consumer-fraud case, *Humphrey v. Alpine Air Products*, where the Minnesota Supreme Court adopted the preponderance of the evidence standard. 500 N.W.2d 788, 790–91 (Minn. 1993). Wendland argues that *Humphrey* "must have" reduced the prior reformation standard, because to hold otherwise would be "absurd." We disagree. The fraud action in *Humphrey* is not analogous to a contract-reformation remedy based on "unilateral mistake [by one party] accompanied by fraud or inequitable conduct by the other party." *Leamington Co.*, 615 N.W.2d at 354. While the former is a complete cause of action, the latter is only a singular element of a reformation claim. In other words, basing a reformation action on "fraud or inequitable conduct" does not convert a contract-reformation action into an action for fraud. Furthermore, the Minnesota Supreme Court as recently as 2000 upheld the "clear and consistent, unequivocal and convincing" standard for contract reformation. *Leamington Co.*, 615 N.W.2d at 354; *Fidelity and Guaranty Ins. Co. v. Global Technologies, Ltd.*, 117 F. Supp.2d 911, 914 (Minn. 2000). We see no reason to presume it would not do so now. Accordingly, we conclude that clear and convincing is currently the appropriate standard of proof under Minnesota law.

As an initial step, a party seeking reformation based upon mutual mistake must prove the existence of a valid agreement between the parties expressing their real intentions. *Leamington*, 615 N.W.2d at 354. The intentions shared between the parties

must be identical."The required mutuality of the mistake can only be found if the parties had identical intentions as to the particular term at issue. Each party must have labored under the same misconception. . . . But above all, there must be evidence that there was an actual agreement as to the terms of the policy." 9 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 53.15 at 142–43 (1999).

Here, Wendland & Utz has failed to establish by clear and convincing evidence that it and EMC (through Banfield) agreed–shared identical intentions–as to the scope of the coverage. Wendland asked Banfield on a number of occasions to assure him that "full coverage" was in place. Only Banfield recalls Wendland presenting a hypothetical scenario implicating the type of coverage in question, and only he recalls assuring Wendland that liability involving employee-owned vehicles would be covered. However, Wendland's desire for "full coverage" is too vague to constitute a request for or an agreement on a specific policy term. Wendland's "belie[f]" that he "would have" discussed this type of risk with Banfield cannot overcome the reality that Wendland does not recall asking about the coverage. The evidence presented, even when viewed in the light most favorable to Wendland & Utz, does not support the existence of an agreement that the law firm would be covered for the use of employee-owned vehicles. Consequently, the district court properly granted EMC summary judgment on Wendland & Utz's reformation claim.

B. *Misrepresentation*

Minnesota law allows insureds to sue insurers for coverage misrepresentations in tort. *Saltou v. Dependable Ins. Co., Inc.*, 394 N.W.2d 629, 633–634 (Minn. Ct. App. 1986). In defining the tort of negligent misrepresentation, the Minnesota Courts have relied on the Second Restatement of Torts, that explains the tort as follows:

> One who, in the course of his business, profession or employment, or in
> any other transaction in which he has a pecuniary interest, supplies false

information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977); *see Hebrink v. Farm Bureau Life Ins. Co.*, 664 N.W.2d 414, 420 (Minn. Ct. App. 2003) (adopting the Restatement's definition of negligent misrepresentation).

Wendland & Utz seeks tort damages based upon EMC's alleged misrepresentation to Banfield. Banfield asserts that someone at EMC informed him that Wendland & Utz's policy covered employee-owned vehicles. However, Banfield does not recall the name of the EMC representative with whom he spoke, and no underwriters at EMC could remember having such a conversation with Banfield. In fact, the two underwriters in charge of the Wendland & Utz policy specifically denied that they would have provided such information to Banfield without looking at the policy, and had they looked at the policy, it would have been clear that the policy did not cover the use of employee-owned vehicles.

To establish the tort of misrepresentation, Wendland & Utz must show that its reliance on EMC's alleged statement regarding coverage was reasonable. *Northern Petrochem. Co. v. United States Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn. 1979). EMC contends that because the policy language unambiguously excluded employee automobiles, any reliance on an alleged representation to the contrary is unreasonable as a matter of law. *See Anderson v. Minnesota Ins. Guar. Ass'n*, 534 N.W.2d 706, 709 (Minn. 1995) ("[R]eliance on any explanations contrary to the unambiguous meaning of the policy language is, as a matter of law, unreasonable."). We agree.

The insurance policy in question, though long and complex, unambiguously excludes the coverage Wendland & Utz seeks to enforce. Both Banfield and Wendland had access to the policy and could have discovered–by simply reading the

policy–that employee-owned vehicles were excluded. Accordingly, because these facts do not give rise to an actionable tort, the district court properly granted summary judgment in EMC's favor.

## III. *Agency*

Lastly, Wendland & Utz argues that EMC is vicariously liable for Banfield's negligence under the general rule that an insurance company is liable for the torts of its agents acting within the scope of their employment. *Eddy v. Republic Nat'l Life Ins. Co.*, 290 N.W.2d 174, 177 (Minn. 1980). At the outset, we must determine whether Banfield is an agent of EMC or an independent agent, also known as a broker. The distinction is important because an insurance company is only liable for the torts of its agents. Conversely, a broker is "independently liable to the insured in either contract or tort for failing to procure insurance as instructed." *Frank v. Winter*, 528 N.W.2d 910, 914 (Minn. Ct. App. 1995) (citing *Eddy*, 290 N.W.2d at 177). In other words, a broker's liability for negligence cannot be imputed to the insurance company.

The Heartman Agency markets its services representing that it is not obligated to write coverage for any one company, due to its status as an "independent" agency. Banfield stated in his deposition that his goal is to obtain the broadest possible coverage for his client (the insured) at the best price–regardless of which carrier writes the policy. These facts are determinative. An insurance agent acts on behalf of a particular insurance company, whereas an insurance broker acts on behalf of the prospective insured. *Eddy*, 290 N.W.2d at 176. The evidence supports only one conclusion–Banfield was an agent for an independent insurance brokerage firm not an agent for EMC.

## IV. *Conclusion*

The plain language in the parties' insurance contract unequivocally excludes liability coverage for employee-owned automobiles. Wendland & Utz did not have

a valid agreement that such coverage would be provided. Wendland & Utz cannot show that EMC was ever asked to provide such coverage, and Wendland & Utz never paid for such coverage. Because there are no genuine issues of material fact to be resolved, we conclude that summary judgment was properly granted. Accordingly, we affirm the judgment of the district court.

_____