*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1131**

Melrose Gates, LLC,
Appellant,

vs.

Chor Moua, et al.,
Respondents.

**Filed April 13, 2015
Reversed and remanded
Stauber, Judge**

Hennepin County District Court
File No. 27-CV-13-20229

Steven L. Theesfeld, Yost & Baill, L.L.P., Minneapolis, Minnesota (for appellant)

Mark K. Hellie, Regional Legal Staff Attorney, Eden Prairie, Minnesota (for respondents)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**STAUBER**, Judge

On appeal from summary judgment dismissing appellant-landlord's insurer's subrogation action against respondent-tenants to recover damages from a fire, appellant-landlord argues that the district court misapplied the case-by-case analysis set forth in *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1 (2012). Because the parties' lease agreement

clearly reflects that it was reasonably anticipated by the parties that respondent-tenants would be liable for a property loss caused by respondent-tenants and paid for by appellant-landlord's insurer, we reverse and remand.

**FACTS**

The facts of this case are undisputed. In September 2008, respondents Chor Moua and Maisse Xiong entered into a lease agreement with appellant Melrose Gates, LLC to rent and occupy an apartment located in Brooklyn Center. The apartment was located in a building having approximately 36 residential units, which was part of an apartment complex consisting of seven buildings. The parties' lease agreement expired in April 2009, but the agreement was extended under its original terms on a month-to-month basis.

In June 2012, respondents' apartment and another unit in the same building were damaged by a fire. For the purposes of this appeal, the parties agree that respondents caused the fire by negligently disposing of cigarettes on their deck. Appellant's insurance policy of approximately $19 million covered all seven buildings in the complex and appellant's insurer paid approximately $470,000 to repair the damage.

Respondents had a renter's insurance policy with a limit of $300,000 for personal liability. Appellant's insurer commenced this subrogation action against respondents in November 2013. After cross-motions for summary judgment, the district court granted respondents' motion and dismissed appellant's subrogation action with prejudice. The district court concluded that under the standard set forth in *Rohde*, 820 N.W.2d at 14-16, appellant "may not maintain a subrogation action against [respondents] because the

2

parties did not reasonably expect that [respondents] would be liable for their losses." This appeal followed.

## D E C I S I O N

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. An appellate court reviews a "district court's legal decisions on summary judgment under a de novo standard, and view[s] the evidence in the light most favorable to the party against whom judgment was granted." *Rohde*, 820 N.W.2d at 6 (quotations and citation omitted).

"Subrogation 'is the substitution of another person in place of the creditor to whose rights he or she succeeds in relation to the debt, and gives to the substitute all the rights, priorities, remedies, liens, and securities of the person for whom he or she is substituted.'" *Id.* at 5 (quoting 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 222:5 (3d ed. 1995)). Subrogation in the insurance context "involves the substitution of an insurer (subrogee) to the rights of the insured (subrogor)." *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 76 (Minn. 1997). "Upon payment of a loss, the insurer is subrogated in a corresponding amount to the insured's right of action against any third party whose wrongful conduct caused the loss." *Rohde*, 820 N.W.2d at 5-6. But, subrogation "arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." *Id.* at 6 (quotations omitted). Thus, the general rule

3

has been "that no right of subrogation can arise in favor of an insurer against its own insured." *Id.* (quotations omitted).

Until recently, this general rule has been applied in Minnesota to prohibit a landlord's insurer from maintaining a subrogation action against the landlord's tenants because the tenant was a co-insured under the landlord's policy. *United Fire & Casualty Co. v. Bruggeman*, 505 N.W.2d 87, 89-90 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993), *overruled by Rohde*, 820 N.W.2d at 13. In *Bruggeman*, a landlord's insurer brought a subrogation action against tenants occupying the landlord's property, alleging negligence in causing fire damage to the building. *Bruggeman*, 505 N.W.2d at 88. This court determined that because both the tenant and the landlord had an insurable interest in the building structure (i.e., the possessory interest of the tenant and the ownership interest of the landlord), the tenant was essentially a co-insured on the landlord's fire insurance policy with respect to the building structure. *Id.* at 89-90. This court then concluded that because the tenants were effectively co-insureds under the landlord's policy, and because an insurer cannot subrogate against its own insured, the insurer could not recover amounts paid to the landlord under its policy against the co-insured tenants. *Id.* In so concluding, this court reasoned:

> If . . . each tenant is responsible for all damages arising from its negligence in causing a fire and if each tenant was therefore responsible for its own fire insurance, the same property would be insured many times over. While this may provide insurance companies a welcome windfall, it would be contrary to economic logic and common sense.

*Id.* at 89.

4

In 2012, the supreme court in *Rohde* overruled the rule set forth in *Bruggeman*, and adopted a "case-by-case approach" to ascertain whether an insurer may maintain a subrogation action against the negligent tenant of its insured. *Rohde*, 820 N.W.2d at 13-14. Under this approach, an insurer is able to maintain a subrogation action against a negligent tenant when:

> Based on the lease as a whole, along with any other relevant and admissible evidence, the district court determines that it was reasonably anticipated by the landlord and the tenant that the tenant would be liable, in the event of a tenant-caused property loss paid by the landlord's insurer, to a subrogation claim by the insurer.

*Id.* at 16 (quotations omitted).

Here, after applying the standard set forth in *Rohde*, the district court declined to allow appellant to maintain a subrogation action against respondents based on several factors. First, the district court determined that the lease "as a whole" did not show that the parties "intended or reasonably expected" that respondents would be liable because the lease (1) did not "allocate the risk of loss such as that caused by fire; it merely provides that [appellant] may decide to terminate the Lease in the event of catastrophic damage that destroys the apartment" and (2) the lease did not require either party to purchase insurance, it merely recommended it. Second, the district court referenced the $19 million dollar insurance policy purchased by appellant, and the renter's insurance policy with a $300,000 coverage limit purchased by respondents, and concluded that the "types of insurance purchased by the parties do not support the conclusion that the parties reasonably expected that [respondents] would be held responsible for [the] losses."

5

Third, the district court concluded that the "principles of equity do not permit" the subrogation action to proceed because the apartment complex was large and it was "unlikely that [respondents] had an insurable interest in the property outside their unit or would have been permitted to purchase an insurance policy intended to cover fire damage to the complex." Finally, the district court concluded that appellant's insurer could not have reasonably expected to recover from respondents because, at the time the parties signed the lease in 2008, *Bruggeman*, which barred subrogation actions, was the law.

Appellant argues that the district court erred by concluding that it was not allowed to maintain its subrogation action. In making this argument, appellant argues that our standard of review is de novo. Conversely, respondents argued in their brief that the applicable standard of review is an abuse of discretion.[1]

We acknowledge that our supreme court has held that "[g]ranting equitable relief is within the sound discretion of the [district] court [and] [o]nly a clear abuse of that discretion will result in reversal." *Nadeau v. Cty. of Ramsey*, 277 N.W.2d 520, 524 (Minn. 1979); *see also Citizens State Bank v. Raven Trading Partner, Inc.*, 786 N.W.2d 274, 277 n.2 (Minn. 2010) (reviewing grant of summary judgment involving equitable subrogation for abuse of discretion). But in *SCI Minn. Funeral Servs., Inc. v. Washburn–McReavy Funeral Corp.*, the supreme court held that a de novo standard applies when reviewing summary judgment on equitable issues and that *Citizens* is not necessarily controlling on the standard of review. 795 N.W.2d 855, 860-61 (Minn. 2011). And in discussing the applicable standard of review, the supreme court in *Rohde* quoted *SCI*

---

[1] Respondents conceded at oral argument that our standard of review is de novo.

*Minn. Funeral Servs.* in noting that "[w]hile subrogation is an equitable remedy, a standard of review more deferential than de novo, which may be applicable on appeal from summary judgment 'where after balancing the equities, the district court determines not to award equitable relief,' is not applicable here where the district court determined as a matter of law that [the landlord] could not maintain a subrogation action." *Rohde*, 820 N.W.2d at 6 n.3 (quoting *SCI Minn. Funeral Servs.*, 795 N.W.2d at 860-61). Moreover, the material facts here are not in dispute. *See Leamington Co. v. Nonprofits' Ins. Ass'n*, 615 N.W.2d 349, 353 (Minn. 2000) (stating that a de novo standard of review is applicable when the material facts are not in dispute). Therefore, we review de novo whether the district court erred by concluding that appellant may not maintain a subrogation action against respondents.

Appellant argues that the district court misapplied the case-by-case analysis set forth in *Rohde* because the parties' lease contains a provision that "generally hold[s] [respondents] responsible for damage and provides notice that [appellant] will not be responsible for damage caused by the negligence of its tenants-residents." Appellant argues that because this provision "provided notice," and therefore established a "reasonable expectation, to all parties that [respondents] will be responsible for any damage caused by their negligence," the district court erred by dismissing the subrogation action.

We agree. Our supreme court in *Rohde* stated that the "case-by-case analysis begins with the written documents executed by the parties," and that "[o]ften a court will be able to determine the expectations of the parties from the language of the lease itself."

7

820 N.W.2d at 14-15.  The court reasoned that "[i]n determining the expectations of the parties as articulated in the lease, courts should look for evidence indicating which party agreed to bear the risk of loss for a particular type of damage."  *Id.* at 15.  The court further explained that if a lease requires a tenant to procure insurance covering a particular type of loss, that requirement constitutes evidence that the parties reasonably expected that the tenant would be liable for that particular loss, which would allow another insurer who pays the loss to bring a subrogation action against the tenant.  *Id.* But the supreme court specifically noted that a determination that there is no express agreement with respect to a particular loss does not preclude a determination of the reasonable expectation of the parties based on other "provisions in the lease and on other relevant evidence."  *Id.* at 15 n.11.

Here, the lease unambiguously provides that "**RESIDENT SHALL REIMBURSE MANAGEMENT FOR: . . .** Any loss, property damage, or cost of repair or service (including plumbing problems) caused by negligence or improper use by RESIDENT, his/her agents, family, or guests."  Although this language does not identify a particular type of loss that need be covered by insurance, such particularity is not required by *Rohde* in order to maintain a subrogation action where the reasonable expectation of the parties is clear by any and all provisions in the lease.  *See id.*  The above quoted language from the parties' lease is unambiguous and puts the tenant on notice that appellant would seek reimbursement for any damage resulting from the tenant's negligence.  Moreover, another section of the lease provides that "MANGEMENT is not responsible for any damage or injury that is done to RESIDENT

8

or his/her property, guests or their property that was not caused by MANGEMENT." And the lease "recommends that RESIDENT obtain Renter's Insurance to protect against injuries or property damage." This language further reflects an intention that each party be responsible for damage caused by their actions.

Respondents argue, and the district court concluded, that the section of the lease allowing appellant to cancel the lease in the event the apartment is destroyed demonstrates that the parties did not reasonably anticipate that respondents could be liable to a subrogation claim. We disagree. The section referenced by respondents states that "[i]f the Apartment is destroyed or damaged so it is unfit to live in due to any cause, MANAGEMENT may choose not to rebuild or restore the Apartment and/or may terminate this Lease immediately with no further responsibility to RESIDENT." But this language simply allows appellant to terminate the lease if the apartment is destroyed. And we see nothing in this language that conflicts with the provisions of the lease stating that respondents are responsible for damage done to the apartment as a result of their negligence. Because the plain language of the lease unambiguously states that respondents would be responsible for any damage to the apartment that resulted from their negligence, the parties reasonably anticipated that respondents would be liable to a subrogation claim.

Finally, because the parties' reasonable expectations can be determined from the plain language of the lease, we note that the same result is required after consideration of

other relevant evidence.[2] *See Rohde*, 820 N.W.2d at 15 (stating that "in addition to the actual language of a lease or insurance policy, courts engaged in a case-by-case analysis may also examine any other admissible evidence shedding light on the expectations of the parties" (quotations omitted)). The undisputed evidence reflects that respondents obtained a renter's insurance policy with a $300,000 policy limit for "personal liability," a limit higher than would ordinarily be necessary to insure a tenant's personal property. A "personal liability" policy also indicates an intent to insure any damage to the building due to respondents' negligence. And although respondents' $300,000 policy limit is insignificant compared to appellant's policy coverage, the district court's reliance on this disparity is misplaced. Appellant's insurance policy covered the entire apartment complex of seven buildings. In contrast, respondents require far less coverage. The $300,000 policy reflects such coverage and further supports the conclusion that the parties reasonably anticipated that respondents would be liable to a subrogation claim by appellant's insurer in the event of a property loss caused by respondents that was paid by the appellant's insurer. Therefore, we conclude that the district court erred by granting summary judgment in favor of respondents and dismissing appellant's subrogation claim, and we reverse and remand for proceedings consistent with this opinion.

    **Reversed and remanded.**

---

[2] In our consideration of all relevant evidence, we note that the same result would be reached under either a de novo standard of review or a standard of review more deferential.