## H. J. LUCAS v. MEDICAL ARTS BUILDING COMPANY AND ANOTHER.[1]

April 26, 1940.

No. 32,339.

*Louis H. Joss* and *Walter A. Schweppe,* for appellant.

*Guesmer, Carson & MacGregor* and *Donald F. Pratt,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order sustaining the corporate defendant's separate demurrer to his complaint. Hereafter we shall refer to that defendant as the "company" and to the individual defendant as "Yeates."

[1]Reported in 291 N. W. 892.

Plaintiff's cause has for its foundation a written contract entered into by the defendants on July 17, 1928. Under its terms Yeates was designated as "employe," the company as "employer." Yeates agreed "to look after the renting, and such details as the employer may call upon him to perform in connection with the maintenance of the present Yeates Building * * * and the nineteen-story addition to said building which is now about to be constructed" in Minneapolis. But he was not "to be agent of the employer in any respect except to get tenants." And "no leases or agreements shall be binding upon the employer unless they are approved in writing" by designated officers of the company. Nor did he have any authority to collect rents or any other money due the employer. The employer was authorized to terminate the employment "without any liability or obligation" on its part whenever "the services" were not deemed "satisfactory." The judgment of its designated officers in respect of discharge was to be "final and conclusive." The consideration for the services so to be rendered by Yeates was to be $25,000 the first year and thereafter at the rate of five per cent of gross rents collected from the properties as to which Yeates was to act. Out of this sum he was to receive $15,000 per year, payable in monthly payments. The remaining $10,000 per year was to be paid to creditors listed in certain exhibits attached to the contract. The parties "agreed that this is a personal contract of personal reëmployment * * * and that the same is not to any extent assignable by employe." The limit of the contract was ten years.

Plaintiff's company (Northwestern Terra Cotta Company) was one of the listed creditors. It later experienced financial difficulties, and plaintiff was appointed its receiver and is now acting and has authority as such to bring this suit. He "is prosecuting this action for and on behalf of himself and for and on behalf of all of the parties" designated as creditors in the mentioned contract. Yeates continued in the employment of the company until he became a bankrupt May 10, 1932. He was later (just when is not alleged) discharged by the bankruptcy court. A trustee

was appointed in and by that court, but the trustee received no assets and disbursed no funds. Plaintiff's insolvent corporation filed its claim there, but neither it nor any other creditor received anything. He now claims (on information and belief) that the building company is holding an amount exceeding $10,000 available to the creditors sought to be protected by virtue of the contract between the defendants. It is his theory that, under its terms, the moment any funds became available to creditors thereunder the title to such funds vested in the creditors and the company is in possession thereof simply as trustee for them. The contract provides "that title to any money which may at any time be earned by employe under this contract shall, as such earning is made and takes place, vest in the creditors of employe." The company agreed that as to such sums it would make disbursement *pro rata* "at six months intervals." What plaintiff wants is an accounting by the company of the funds so withheld and in its hands to the end that the court may ratably distribute the same amongst the mentioned creditors.

The company demurred to the complaint on the following grounds:

(1) That the court "does not have jurisdiction of the subject of the action;

"(2) That the plaintiff has not legal capacity to sue;

"(3) That the facts stated in said amended complaint do not constitute a cause of action."

The court sustained the demurrer "in all respects." The memorandum, however, which is attached thereto and made a part thereof, places the conclusion so reached upon the theory that the contract was an assignment of wages or salary, hence violative of 1 Mason Minn. St. 1927, § 4137, "which makes such assignments 'absolutely void.'" The court was "quite definitely of the opinion that the contract referred to is an assignment of unearned wages purporting to run for more than 60 days," and as such strictly within the prohibition of the statute. In respect to plaintiff's contention that the contract was a common-law assign-

ment for the benefit of creditors, the court thought that even if this contention were sustained it would not be of any "benefit" to him "for the reason that it reserves benefits to the assignor before all of his debts have been paid, and also undertakes to dictate to the creditors the terms upon which they may share in the assignor's estate." Taking this view, the court deemed it unnecessary "to consider the effect of the adjudicated bankruptcy of the defendant Yeates or of the filing of a claim therein by the plaintiff."

1. We go directly to the point deemed decisive by counsel and the court, namely, that the complaint fails to state facts sufficient to constitute a cause of action. If the complaint is such that, construed liberally, it states facts entitling plaintiff to any relief, whether legal or equitable, it is not subject to the challenge here interposed. And this is true although plaintiff may have misconceived the nature of his cause or demanded inappropriate relief. Canty v. Latterner, 31 Minn. 239, 17 N. W. 385. Many other cases are cited in 5 Dunnell, Minn. Dig. (2 ed. & 1934 Supp.) § 7549, under note 77.

2. So viewing the complaint, it is clear that the company holds a large sum of money intended by both defendants to be available to those of Yeates' creditors there listed, plaintiff among them. The situation is such that if this money is to be retained by the company the result is an unjust and unjustifiable enrichment—something quite the contrary of what the parties intended.

The company's chief attack upon the complaint has for its basis the claim that inasmuch as the contract is wholly void neither plaintiff nor any of Yeates' other listed creditors can predicate any right thereunder; hence that it owes neither him, nor any of them, any duty or obligation to disclose or disgorge. The statute to which it points (1 Mason Minn. St. 1927, § 4137) reads:

"Every assignment, sale or transfer, however made or attempted, of wages or salary to be earned or to become due, in whole or in part, more than sixty (60) days from and after the day of the

making of such transfer, sale or assignment, shall be absolutely void."

In Murphy v. County of St. Louis, 187 Minn. 65, 244 N. W. 335, the court had for its consideration the constitutionality of the quoted section, including also §§ 4135 and 4136. The holding (foreshadowed in Fay v. Bankers Surety Co. 125 Minn. 211, 146 N. W. 359, Ann. Cas. 1915C, 688) was that the legislature under its police power could "regulate, if it proceeds reasonably, the assignment of unearned wages or salary without infringing a constitutional right"; that "restricting and regulating the assignment of unearned wages and salary, applies to both" such wages and salaries. There plaintiff, a judgment creditor, sought to impound the salary of a county commissioner by means of levy under an execution. The salary payments so levied upon had been assigned to a bank prior to the levy. The action "proceeded as an equitable one to reach and apply on an execution money owing [by the judgment debtor] Murray" to plaintiff. (187 Minn. 66, 244 N. W. 335.) There having been failure to comply with the mentioned statutes in certain respects, the judgment creditor was, for reasons ably stated in the opinion, awarded the right of priority and recovery.

We are not concerned here with any money that may have been earned by Yeates after his adjudication in bankruptcy. Our sole concern is whether this money in the hands of the company at the date of adjudication belonged to Yeates' listed creditors or to the company, for as to Yeates there is no apparent conflict. He has not made any claim thereto nor asserted any interest therein. For aught that appears he has acquiesced in the disposition to be made as set forth in his contract with the company.

The cases generally hold (although some courts hold otherwise) that an assignment of wages to be earned in the future, given to secure a debt dischargeable in bankruptcy, is avoided and extinguished by a discharge of the assignor in bankruptcy as of the date of the adjudication; hence wages earned by the bankrupt after the date of the adjudication become his property free from

the claims of the assignee. Public Finance Co. v. Rowe, 123 Ohio St. 206, 174 N. E. 738, 74 A. L. R. 900. (Numerous cases are found cited at p. 904 of the annotation.) Local Loan Co. v. Hunt, 292 U. S. 234, 54 S. Ct. 695, 78 L. ed. 1230, 93 A. L. R. 195, annotation at p. 202. The obvious purpose of such enactment is to protect the wage or salary earner against the oftentimes oppressive creditor who seeks to tie him to a state of helplessness by securing assignments of his means of livelihood. "From the viewpoint of the wage earner there is little difference between not earning at all and earning wholly for a creditor." Local Loan Co. v. Hunt, 292 U. S. 234, 245, 54 S. Ct. 695, 699, 78 L. ed. 1230, 1236, 93 A. L. R. 195, 202. For an interesting and instructive history of this type of legislation, see 19 Minn. L. Rev. 536, "The Wage Assignment Problem."

As between plaintiff and those whom he represents and the company, it not only seems to be, but in fact is, clear that Yeates' discharge in bankruptcy did not relieve the company from its duty to respond to the creditors to whom it had solemnly promised to pay Yeates' earnings. For it long has been established here and elsewhere that, except as prohibited by statute (Murphy v. County of St. Louis, 187 Minn. 68, 244 N. W. 336, and cases there cited), "an assignment of wages to be earned in the future under an existing contract of employment is good between the parties."

In May v. Walker, 35 Minn. 194, 197, 28 N. W. 252, 253, plaintiff, a creditor of defendant, brought garnishment against the assignee under a voluntary assignment for the benefit of creditors made by defendant. The assignment was held to be wholly void, and the court permitted plaintiff to recover as a garnishment creditor, being of the view that the assignment, being void, plaintiff might disregard it "and lay hold of the assigned property or its proceeds in the hands of the assignee, by garnishment or otherwise." If a garnishment creditor can reach such a fund, why not plaintiff and the other creditors whom he represents?

We are not saying that this contract was in fact a common-law assignment for the benefit of creditors. There is nothing in the

instrument so saying or implying; nor is there any allegation that Yeates was insolvent when he executed it. As between the two contending parties here, we should apply the principle that, "Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee." Taylor v. Benham, 5 How. 233, 274, 12 L. ed. 130, quoted with approval in Brown v. Maplewood Cemetery Assn. 85 Minn. 498, 512, 89 N. W. 872, 879. And at p. 515 this quotation is also pertinent here:

" 'If the plaintiff has a right, he must of necessity have a means to vindicate and maintain it.  *  *  *  It is a vain thing to imagine a right without a remedy.' "

Of some worth also is Armour Packing Co. v. Brown, 76 Minn. 465, 468, 79 N. W. 522, where, as here, the question of the validity of an assignment became important. The court was of opinion that to the extent defendants had performed under it, it was valid and could only be attacked under the provisions of the bankruptcy law. The mere fact that the present instrument may have been void or voidable as to the creditors of Yeates when he filed his petition in bankruptcy and was adjudicated a bankrupt obviously does not permit them, independently of such proceedings as are by that act provided, to avoid this assignment, and assuredly the company cannot.

While the complaint is not a model pleading, we think a cause of action is stated, and the order is accordingly reversed.