Shirley HUTTON, Respondent,

v.

Anita Beck BOSIGER and anita beck cards & such, Inc., Appellants.

No. C3–84–1815.

Court of Appeals of Minnesota.

April 19, 1985.

Review Denied June 27, 1985.

Sandra K. Agvald, Minneapolis, for respondent.

Paul G. Neimann, Minneapolis, for appellants.

Heard, considered, and decided by HUSPENI, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

HUSPENI, Judge.

Appellants Anita Bosiger (Bosiger) and anita beck cards & such, Inc. (Beck) appeal from judgment entered after trial without a jury, which awarded $20,031.06 to respondent, Shirley Hutton (Hutton), determined that monies advanced by Hutton to Bosiger constituted a loan, not a sale, and determined that Hutton was Beck's agent. Hutton seeks review of the court's denial of her request for attorney's fees. We affirm.

## FACTS

Hutton was a national sales director for Mary Kay Cosmetics. Bosiger was president and majority shareholder of Beck which manufactures and sells greeting cards and related products. In late 1979, Bosiger contacted Hutton seeking information as to the manner in which Mary Kay marketed its products. This led to more conversations in 1980 regarding the sale of Beck calendars to Mary Kay personnel as ultimate purchasers.

Bosiger and Hutton agreed that Beck would manufacture 5,000 sets of a product that included a calendar, notebook, notes, box, decorative bee and ribbon. Bosiger contended at trial that Hutton purchased the sets herself, at a 15% discount, for resale to Mary Kay personnel. Hutton contended that she was an agent for Beck and was to receive a 15% commission on her sales. A document encaptioned "order" lists some terms of their agreement, but does not address whether Hutton was to be an agent or a purchaser.

To finance the project, Hutton paid $20,000 to Beck. Hutton claimed that the money was only a loan; Bosiger claimed that it was the downpayment for an actual purchase by Hutton.

Beck delivered 300 sets of merchandise for Hutton to test market at an Iowa Mary Kay convention in November 1980. Sales were weak. Thereafter, Hutton and Bosiger decided to break down the sets into individual components and market them separately. They intended to target a Dallas Mary Kay convention scheduled in June 1981.

In preparation for the convention, Bosiger shipped goods at her own expense to Dallas. She forwarded to Dallas price sheets and mail order forms, flowers, posters and a tablecloth to decorate the Dallas sales room. The room in Dallas was rented in Bosiger's name. This was done, she argued, so that Hutton could avoid any appearance of conflict of interest with her Mary Kay duties. Hutton paid for the room. She also paid two sales persons hired for the Dallas convention. She stated that this was her responsibility as agent.

A document was prepared to reflect the dates, numbers and prices of the goods shipped to Iowa and Dallas. Both parties

signed it. The document did not reflect whether Hutton's role was that of purchaser or agent. It did, however, contain the remark "commission is 15% on all but calendars."

Unfortunately, only $207.09 of the merchandise was sold. Checks were made out directly to Beck and all proceeds of the sale were turned over to Bosiger. Bosiger shipped 67 cartons of unsold merchandise back to her warehouse at her own expense. She stated that this was to accommodate Hutton, who had no storage facility. Bosiger never requested that Hutton pay for the shipping and never demanded that she pick up the merchandise. Attempts to mitigate the losses were futile. The enterprise was a substantial failure.

There was evidence from Beck's accountant that the $20,000 was not included in income but was treated as a liability for "prepaid sales." Further, the parties' transaction was not recorded on an accounts receivable ledger. In a sales transaction, such recording would have been an ordinary practice for Beck. Standard shipping and billing forms were not used. No invoices were sent to Hutton. No changes were made in inventory when the 67 cartons were shipped or returned.

At the close of testimony, the court granted Hutton's motion to amend her complaint to state a cause of action based on a joint venture and on agency. Hutton did not request to amend her complaint to state an action based on a loan.

Following trial, the court determined that the $20,000 was a loan which Bosiger and Beck were required to repay. The trial court's award to Hutton represented this $20,000, plus 15% commission on sales of $207.09.

## ISSUES

1. Did the court err by granting Hutton relief on her $20,000 "loan" when her complaint requested return of $20,000 "collateral"?

2. Did the court err in finding that:

(a) the $20,000 paid by Hutton to Bosiger was a loan and not a sale?

(b) Hutton was Beck's sales agent?

3. Did the trial court err in refusing to award to Hutton attorney's fees pursuant to Minn.Stat. § 549.21 (1984)?

## ANALYSIS

1. Bosiger and Beck allege that the trial court erred in basing its relief upon an issue which was neither raised by the pleadings nor litigated by consent. Hutton's complaint demanded the return of $20,000 paid to Bosiger as "collateral" for the merchandise. As early as the opening statement during trial, however, Hutton contended that the $20,000 was a "loan." Prior to closing argument, the court characterized the transaction as a loan. In their written closing argument to the court, Bosiger and Beck themselves remarked:

In her complaint, Plaintiff asserts the $20,000 was in the nature of a loan to the Defendants, and that it was time to be repaid. * * *

We conclude that there was no error in the trial court's award of relief based on the $20,000 being a loan.

■ Notice pleading only requires:
(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and
(2) a demand for judgment for the relief to which he deems himself entitled, and if a recovery of money be demanded the amount shall be stated.

Minn.R.Civ.P. 8.01. With the demise of code pleading, the formal character of a complaint no longer determines the cause of action. *Walsh v. Mankato Oil Co.*, 201 Minn. 58, 275 N.W. 377 (1937). Pleadings are to be liberally construed, even when a plaintiff has misconceived the nature of his claim. *Lucas v. Medical Arts Building*, 207 Minn. 380, 291 N.W. 892 (1940). In light of the liberal ideal behind modern pleading, we believe that Hutton's complaint gave Bosiger and Beck sufficient notice of the claim against them.

An identical factual foundation supports a recovery based on loan theory and a recovery based on collateral theory. It is inconceivable that Bosiger and Beck would have conducted discovery or witness examination differently had the transaction been denominated differently in Hutton's complaint.

■ Additionally, Hutton argues that, even though the loan theory was not explicitly pleaded in the complaint, it was litigated by consent. We agree. We also recognize that the Minnesota Supreme Court has cautioned against implying litigation of an issue by consent too freely:

Litigation by consent is not to be applied artificially, but rather is to be implied where the novelty of the issues sought to be raised is reasonably apparent and the intent to try these issues is clearly indicated by the failure to object or otherwise.

*Roberge v. Cambridge Cooperative Creamery Co.*, 243 Minn. 230, 235, 67 N.W.2d 400, 404 (1954). However, at one point or another during the trial, both attorneys and the court itself matter-of-factly referred to the transaction as a "loan." No objection was raised. Bosiger and Beck's attorney referred to the alleged "loan" in his final argument. The court did not invent a loan in its findings. The transaction itself and the parties' treatment of that transaction throughout trial naturally lent credence to the determination that this was an issue litigated by consent. We find no error in the trial court's action.

2. Bosiger and Beck next allege that there is no support in the record for the trial court's determination that the parties' transaction was a loan, not a sale.

In a court trial:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01. In this case, there were no written documents which unambiguously reflected the relationship between the parties or which characterized the na-ture of the $20,000 payment. The trial court was required to decide the issues before it primarily on the basis of the credibility of the witnesses.

■ (a) Beck's accounting books were, at best, inconclusive on the issue of whether the transaction was a loan or a sale. Certainly, Beck did not treat Hutton as it did its other sales customers. The trial court recognized that the documents were not skillfully drafted and did not reflect the nature of the transaction.

Hutton testified that she did not buy the merchandise at issue. This position is consistent with the parties' stated overall intent to treat Mary Kay personnel as the ultimate purchasers. It is also consistent with the notation "commission is 15% on all but calendars" on the transaction document. The trial court was required to make its factual determinations on the basis of conflicting testimony. We cannot conclude that it committed error in determining that the $20,000 was a loan, not a sale.

■ (b) Finally, Bosiger and Beck claim that there is no evidence to support the trial court's determination that Hutton was their agent. We cannot agree. The events occurring at Dallas support Hutton's argument that she was acting as an agent. Beck's role appeared to be a proprietary one. Order forms, room decorations, and the document indicating that Hutton was to receive a commission on all goods sold except calendars support an agency determination. Further, checks were made directly to Beck, goods were shipped back to Minnesota at Beck's expense, and Beck did not account for this transaction in the same manner as it did other sales to customers. We find no error by the trial court.

3. Following trial, Hutton requested an award of attorney's fees pursuant to Minn. Stat. § 549.21 (1984). The request was denied.

■ The court may, in its discretion, award attorney's fees to the prevailing party when an opposing party or counsel "act-

ed in bad faith as to that issue, asserted an unfounded position or committed a fraud upon the court." Minn.Stat. § 549.21 (1984). There is no evidence that Bosiger or Beck or their counsel were disingenuous. The court did not err in denying Hutton's motion for attorney's fees.

### DECISION

1. The complaint encompassed an action based on a loan. The loan issue was litigated by consent.

2. The court's conclusions that Hutton loaned $20,000 to Bosiger and Beck and that Hutton was Beck's sales agent were based on sufficient evidence.

3. The court did not err in denying Hutton's motion for attorney's fees.

We affirm.