STATE of Minnesota, Appellant,

v.

Steven Ray OHRTMAN, Respondent.

No. C3-90-1872.

Court of Appeals of Minnesota.

Feb. 12, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Ross E. Arneson, Blue Earth County Atty., Mankato, for appellant.

Peter Thompson, Thompson & Lundquist, Ltd., Minneapolis, Charles A. Adamson, Mankato, for respondent.

Considered and decided by RANDALL, P.J., and FORSBERG and DAVIES, JJ.

## OPINION

DAVIES, Judge.

This is an appeal by the state from an order dismissing a complaint charging fourth degree criminal sexual conduct (sexual contact by a psychotherapist) under Minn.Stat. § 609.345, subd. 1(h) (1990). We affirm.

## FACTS

Respondent Steven Ohrtman, the pastor of a Mankato church, was charged with fourth degree criminal sexual conduct allegedly committed against J., a parishioner, during a counseling session.

The complaint alleged that Ohrtman, at his third counseling session with J., requested a beer, asked for and, after pulling up his shirt, received a back rub, allegedly encouraged J. to divorce her husband and, finally, gave J. a hug during which he compressed her breasts against his chest. It is alleged that his penis was erect during the hug. The hug was charged as an unlawful act, but no unlawful touching with penis was charged.

Ohrtman moved to dismiss the complaint on grounds of lack of probable cause, failure to state an offense, and due process vagueness. The trial court dismissed the complaint, finding no precedent for applying the criminal sexual conduct statutes to a "consensual hugging situation." The court held that "[c]riminal sexual conduct could occur in consensual hugs by a psychotherapist" only where there are "unambiguous indicators of sexual * * * intent." The state appealed from the order.

### ISSUE

Did the trial court err in dismissing the complaint?

### ANALYSIS

In a pretrial appeal, the state must demonstrate clearly and unequivocally that the trial court erred in its judgment and that the error will have a critical impact on the outcome of trial. *State v. Joon Kyu Kim,* 398 N.W.2d 544, 547 (Minn.1987). An order of dismissal plainly meets the second part of the test.

Although what Ohrtman allegedly did here is inappropriate, unprofessional, and exploitative, the question we face is, can it be criminal? Crimes are defined by the legislature.

The task of defining criminality is seldom more difficult than when the law confronts subtle and often ambiguous activity such as is involved here. The legislature has not criminalized all sexual conduct; it has attempted to make carefully crafted distinctions between lawful acts and criminal sexual behavior. These distinctions are especially difficult when the legislature attempts to confirm a cultural change, here the movement against exploitative sexual behavior. Despite lingering acceptance by some of such sexual conduct, the legislature has declared in the criminal sexual conduct statutes that the strong cannot exploit the weak.

Toward that end the legislature adopted Minn.Stat. § 609.345, subd. 1(h) (1990), which provides that it is a crime, criminal contact in the fourth degree, for a psychotherapist to engage in "sexual contact" with a patient during a psychotherapy session. Consent by the patient is not a defense. *Id.* The clergy are included within the definition of "psychotherapist," and counseling is within the definition of "psychotherapy." Minn.Stat. § 609.341, subds. 17, 18 (1990).

Ohrtman argues that his hug was not within the statutory definition of "sexual contact," a defined element of the crime charged. Our responsibility is to give the definition a meaning consistent with legislative intent. *Application of Christenson,* 417 N.W.2d 607, 610 (Minn. 1987). One presumption we must follow in finding intent is that the legislature does not intend a meaning that is unconstitutional. *See State v. Target Stores, Inc.,* 279 Minn. 447, 467–68, 156 N.W.2d 908, 921 (1968); *Minnesota Higher Education Facilities Authority v. Hawk,* 305 Minn. 97, 103, 232 N.W.2d 106, 110 (1975). A criminal statute is unconstitutional if it does not give fair warning of the proscribed conduct. *State v. Merrill,* 450 N.W.2d 318, 322–23 (Minn.1990). If the legislature fails to draw a bright line for determining where criminality begins, the statute may fail for vagueness. *State v. Becker,* 351 N.W.2d 923, 925 (Minn.1984). We will return later to the problem of vagueness.

"Sexual contact" has the same statutory definition for all cases of criminal sexual conduct, including cases involving psychotherapists:

"Sexual contact" * * * includes any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, and

committed with sexual or aggressive intent:

(i) the intentional touching by the actor of the complainant's intimate parts.

Minn.Stat. § 609.341, subd. 11(a)(i) (1990). Violation of other paragraphs ((ii) to (iv) of (a) and (i) to (iv) of (b)) are not charged here. We note, however, that all use "touching" as the active word.

■ The trial court and respondent draw a distinction between "consensual" and "non-consensual" hugs. We do not think that distinction controls in this case because consent is irrelevant under the statute when the touching is done by a "psychotherapist." Actual consent is irrelevant for illegality; the equivalent of coercion was present as a matter of law because of the counselor/counselee relationship of J. and Ohrtman.

The trial court also ruled that, to be criminal, there had to be "unambiguous indicators of sexual * * * intent." In our view, the alleged erection would, if proved, be such an indicator. Therefore, it cannot be held as a matter of law that there was no "sexual or aggressive intent." The dismissal of the complaint before trial for failure to satisfy that element of the crime is inappropriate because the complaint against Ohrtman charged an act committed with sexual intent.

■ Furthermore, the act charged involved contact with an intimate part of complainant. "Intimate parts" includes the breasts. Minn.Stat. § 609.341, subd. 5 (1990). The question remains whether a hug of chest to breasts, without more, is a "touching" within the statute. This case ultimately turns on what the word "touching" means in the context of the criminal sexual conduct statute.

The legislature has not defined "touching," leaving it open-ended, as the word that marks the edge of the statute. We must, therefore, apply it so as to implement the legislative intent to have a criminal sexual conduct law that is rational, understandable, and constitutional.

No Minnesota criminal case construes "touching," as it is used in the criminal sexual conduct statutes, to include hugs with nothing more.[1] No case, however, explicitly excludes hugs either, so this is a case of first impression. And no cases from other jurisdictions cited to us or found are on point.[2]

The term "touching" as a definition of "sexual contact" was introduced with the 1975 revision of Minnesota's sexual offense laws. 1975 Minn.Laws ch. 374, codified as Minn.Stat. § 609.341. The definition of "sexual contact" premised on touching is broadly applicable in Minnesota's criminal sexual conduct statute. In the structure of these statutes, violations in the second, fourth, and fifth degree are all based on sexual contact and, thus, on touching. First and third degree violations involve penetration. Touching clearly must be serious conduct in this formulation, *for it parallels penetration* in bringing conduct under the criminal sexual conduct law. Penetration leaves open no further step of conduct and provides a bright line of coverage; it gives rise to few vagueness problems. Touching is another matter, as this case demonstrates. We must, therefore, find a meaning for touching that not only carries out the legislative intent to separate merely obnoxious behavior from conduct that deserves criminal sanction, but also provides a meaning that is easily enough understood to give fair warning.

In the absence of compelling judicial precedents we turn to the dictionary definition of touching:

---

1. *Cf. State v. Lockhart,* 376 N.W.2d 249, 252–53 (Minn.App.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985) (sexual contact occurred although complainant had bedding as well as her own nightclothes between herself and defendant).

2. All hugging cases seem to involve some additional sexual touching. *See, e.g., Santa Clara County v. Willis,* 179 Cal.App.3d 1240, 225 Cal. Rptr. 244 (1986); *Baine v. State,* 181 Ga.App. 856, 354 S.E.2d 177 (1987); *McKinney v. State,* 82 Md.App. 111, 570 A.2d 360 (1990); *State v. Berkman,* 230 Neb. 163, 430 N.W.2d 310 (1988); *Bowman v. Parma Bd. of Educ.,* 44 Ohio App.3d 169, 542 N.E.2d 663 (1988); *Herring v. State,* 659 S.W.2d 391 (Tex.Crim.App.1983).

1. to put the hand, finger, or other part of the body on, so as to feel; *to perceive by the* sense of feeling * * *.

Webster's New Twentieth Century Dictionary 1928 (2nd ed. 1983) Dorset & Baber (emphasis added). The first definition mentions fingers and hands and has as its core the "sense of feeling." The danger of ambiguity is substantially avoided by adopting only this first core meaning. It seems appropriate, therefore, in this circumstance to limit touching to contacts designed primarily to create the sensory feeling of touch.

We turn again to the dictionary, now for a definition of hug, both verb and noun:

1. to put the arms around and hold closely and *fondly;* to embrace tightly and *affectionately.*

* * * * * *

[A] close, affectionate embrace.

Webster's New Twentieth Century Dictionary 883 (2nd ed. 1983) Dorset & Baber (emphasis added).

An ordinary hug, we see, seeks to convey and promote an attitude of affection; rather than the sense of feeling. We believe the legislative intention would be to exclude hugs from the term "touching" under the statute when no additional sexual act is involved; an act which, more than any other, is used as an expression of fondness and affection ought not be threatened with sanction. The law can hold off on criminal sanctions unless some additional touch, some more menacing act occurs.

■ An interpretation of touching which requires contact primarily by hand or fingers or other organ used for feeling, like mouth or penis, seems the likely legislative intent. It also seems likely the legislature meant to limit unlawful touching to conduct that, unlike hugging, has no analogue of polite conduct. To so limit the meaning of touching also avoids most vagueness problems. We do not now say that touching is always so limited, but we can say that the chest is not a part of the body generally used to reach out for purposes of "feeling." The inclusion of contact with chest within touching seems too intrusive; in this case it goes too far. To make touching include hugs, and thereby to make hugging criminal sexual conduct, raises in our view excessive vagueness in the context of this case.

To include hugs within touching also has potential for great mischief because the meaning of touching must be the same wherever the term appears in the criminal sexual conduct statutes. Whatever meaning is given to touching in this case must fit all second, fourth, and fifth degree violations. We therefore must examine how the act of squeezing another to one's chest fits as unlawful touching throughout the criminal conduct statutes. It is relevant how a meaning proposed for one context fits all others.

We first treat cases involving children and counselees, where consent does not license conduct. Clearly there is misbehavior when a counseling relationship is abused with a sexually exploitative hug, whether it is consented to or not. Likewise there is offensive conduct when an adult exploits a child with a sexual hug, although the child either may not know enough to object or fears to do so. The legislature likely wanted to stop such hugs to the extent it could, so it is possible to think of bringing the criminal law into play even if misbehavior stops with the hug. Therefore, it is thinkable to include hugging within criminality where coercion is not an element of the crime.

Yet, to hug a child is usually loving, supportive, comforting. To put the hugger at risk of charges of criminal sexual exploitation is a high price for society to pay to punish the small percentage of bad hugs, especially when the bad hug is not followed by more explicitly sexual conduct.

The definition of touching applies in the context of child abuse. In converting the statute to life by teaching children where the line is drawn between permissible and impermissible acts, reference is made to the "bad spots." Breasts may be included in the "bad spots," but in explaining misbehavior to children it is necessary to communicate the idea of touching as being touched on a bad spot with hand or finger, or being asked or forced to touch the of-

fender's bad spot with your hand, or touching bad spot to bad spot. Chest to chest hugs—without additional sexual contact—do not fit within the acts educated against. For children, as for all of us, hugs are treated as acts of affection, not exploitation.

We turn now to hugs in relationships where consensual sexual conduct is allowed. Here it is even more problematic to treat a hug as a criminal touching, especially under Minn.Stat. § 609.345, subd. 1(c), which makes touching criminal if: "[T]he actor uses force or coercion to accomplish the sexual contact." Under this provision nothing more than a forced, sexually aggressive *touching* constitutes criminal behavior. To avoid introducing into the law an element of serious uncertainty, criminal touching must be clearly "across-the-line" behavior, something society and the legislature might seek to suppress by a criminal sanction. Therefore, for most unwanted hugs, without additional sexual contact, we believe it necessary to rely for relief on rejection, protest, and resistance, rather than on criminal prosecution.

In summary, dictionary definitions of touching emphasize hand and fingers. Minnesota courts have not included hugs per se within unlawful touching. Children are instructed to recognize bad hand touching as misbehavior; hugs are not described as bad. Finally, though the hug may be "bad" here, we do not believe the legislature intended to put a cloud of potential criminality over affectionate hugging. On balance, society does not suffer an excess of hugs.

### DECISION

The trial court here did not clearly err in dismissing the complaint.

Affirmed.

RANDALL, Judge, concurring.

I concur in the result.