*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0154**

Mark Schaefer,
Appellant,

vs.

Cargill Kitchen Solutions, Inc., et al.,
Respondents.

**Filed November 7, 2016
Affirmed
Cleary, Chief Judge**

Wright County District Court
File No. 86-CV-14-5086

Bonnie M. Smith, Adrianna H. Shannon, Shannon Law, LLC, Minneapolis, Minnesota (for appellant)

Ryan E. Mick, Joel O'Malley, John T. Sullivan, Dorsey & Whitney LLP, Minneapolis, Minnesota (for respondents)

Considered and decided by Cleary, Chief Judge; Worke, Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

On appeal from the district court's entry of judgment in favor of respondents Cargill Kitchen Solutions Inc. and Cargill Inc., appellant Mark Schaefer argues that the district court erred by (1) dismissing his battery claim as time-barred, (2) granting respondents'

summary judgment motion on appellant's negligent supervision and retention claims, (3) granting respondents' summary judgment motion on appellant's Minnesota Whistleblower Act claim, (4) granting respondents' summary judgment motion on appellant's claim for punitive damages, and (5) dismissing Cargill Inc. as a party. Respondents filed a related appeal arguing that the district court erred in (1) concluding the Minnesota Workers' Compensation Act did not apply based on the "assault exception" and (2) its statement of facts. We affirm.

## FACTS

Appellant Mark Schaefer was a full-time employee of respondent Cargill Kitchen Solutions Inc. (CKS) from July 2005 until he was discharged on September 19, 2012. CKS is an egg-processing plant and a wholly-owned subsidiary of Cargill Inc. (Cargill). Schaefer worked in the CKS warehouse operating a forklift and completing computer work. CKS hired Donovan Schultz in 2006. Schaefer and Schultz met when Schultz began working in the CKS warehouse, and the two generally had a positive relationship.

Schaefer, along with his coworker James Cowette, allege that Schultz had violent tendencies at work. Schaefer said that Schultz seemed to have a "personal issue" with both Cowette and Schaefer, and that Schultz made threats to Cowette to run him out of the company using his personal connections. Cowette and Schaefer allege that while at work in 2010 or early 2011 Schultz threatened to kill Cowette. Schaefer said that in 2011, his coworker G.L. told Schaefer and Cowette that Schultz assaulted her at work and that he also threatened to kill her.

2

On September 20, 2011, Schultz kicked Schaefer from behind with his right steel-toed boot, striking Schaefer's testicles. Prior to the incident, Schaefer had an exchange of words with Schultz, and Schaefer walked by Schultz and feigned a strike by gesturing his hand toward Schultz at a distance. Schaefer said Schultz looked at him "with those crazy eyes he's got," and said, "You're dead." Schaefer ran away, and Schultz chased him, caught up, and kicked Schaefer. Schaefer recalled that he fell to the floor in pain.

Schultz admitted that he kicked Schaefer. But, according to Schultz, sometime in the fall of 2011, Cowette and Schaefer started jokingly hitting each other in the testicles at work by swinging their hands at each other. Schultz said that Schaefer had kicked him in the testicles a number of times before, and Schaefer would laugh after kicking him. Schultz claims to have warned Schaefer that if Schaefer kicked him again, he would kick him back. Schultz said that the fourth time Schaefer kicked him, he ran after Schaefer and kicked him in the testicles in order to cause Schaefer to stop. A CKS employee who witnessed the kicks said that Schaefer was "most definitely" horsing around. Schaefer denied that he was "horsing around" or being playful with Schultz.

Schaefer claims he first complained to CKS about the kick in October or November of 2011. Heather Whelpley, from CKS's human resources department, remembers first hearing about Schultz kicking Schaefer in May or June 2012. Julie Zimny, the head of CKS human resources in 2012, said that she first heard about the kick in June 2012 when James Cowette reported the incident directly to her. Zimny recalls that, during her investigation, Schaefer told her directly that he had been kicked by Schultz. She also said that Schaefer told her that Schultz, Cowette, and Schaefer "had kind of a running joke

3

where they would hit each other." Schaefer reported no further problems with Schultz to Zimny.

Prior to the reported kicking incident, CKS human resources investigated Schultz twice. In January 2007, Schultz's supervisors issued him a warning for a verbal altercation with another coworker. In connection to the incident, Schultz signed a "violence in the workplace policy" form. Later in 2007, CKS human resources investigated a second complaint that Schultz was verbally abusive towards a coworker. Besides the kick, Schultz's supervisors could not recall any reports of Schultz acting physically violent.

After the reported kicking incident, Schaefer's direct supervisor issued him a number of warnings for performance-related issues. In February 2012, Schaefer's supervisor issued him a written warning for "unsafe forklift operation" and mis-shipping products. On June 18, 2012, Schaefer's supervisor issued him another warning, this time for failing to properly monitor and document products to ensure food safety.

On August 1, 2012, Schaefer's supervisors suspended him for three days because he accrued three warnings in one year—the two prior warnings and a new warning for being late six times in the previous twelve months. Schaefer was considered late for not arriving fifteen minutes before he was expected to be on the work floor in order to stretch and put on equipment. On September 12, 2012, Schaefer was late a seventh time in twelve months. Due to seven occurrences of tardiness and a suspension in the prior twelve months, CKS terminated Schaefer's employment on September 19, 2012, pursuant to CKS's policy handbook.

On September 14, 2014, Schaefer filed a complaint in district court against CKS and Cargill alleging "sexual abuse/sexual assault" (count one), negligent retention and supervision (count two), and violation of the Minnesota Whistleblower Act (count three). Schaefer also sought an award for punitive damages. The parties filed cross-motions for summary judgment: Schaefer on counts one and two, and respondents on all counts. The district court granted respondents' motion for summary judgment on all claims, denied Schaefer's motions, and dismissed Cargill as a party. Schaefer appeals, challenging the district court's grant of summary judgment to CKS and dismissal of his claims, and argues that he is entitled to summary judgment on counts one and two. Respondents filed a notice of related appeal challenging the district court's ruling regarding exclusivity under the Minnesota Workers' Compensation Act (WCA), and challenging factual findings.

## D E C I S I O N

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, appellate courts review de novo whether there are any genuine issues of material facts and whether the district court erred in its application of the law to the facts. *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). Appellate courts view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id*.

No genuine issue of material fact exists for trial when the party opposing summary judgment "presents evidence which merely creates a metaphysical doubt as to a factual

5

issue and which is not sufficiently probative with respect to an essential element . . . to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). Additionally, a party opposing summary judgment "cannot rely upon mere general statements of fact but rather must demonstrate . . . specific facts are in existence which create a genuine issue for trial." *Hunt v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn. 1986).

## I.     Minnesota Workers' Compensation Act Exclusivity

As a threshold matter, respondents argue on related appeal that they were entitled to summary judgment on Schaefer's claims of "sexual abuse/sexual assault" and negligence because, under the WCA, the district court did not have jurisdiction over Schaefer's workplace injury claims. We disagree because there was a genuine issue of fact regarding whether the assault exception to the WCA's exclusivity applied.

Under the WCA,

> employers are required to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence. If an employee suffers a personal injury or death arising out of and in the course of her employment, the Act provides the employee's exclusive remedy. Where the Act provides the employee's exclusive remedy, the district courts have no jurisdiction.

*McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 833 (Minn. 1995) (quotation and citations omitted).

Under the "assault exception," the WCA is not the exclusive remedy for "an injury caused by the act of a . . . fellow employee intended to injure the employee because of

6

personal reasons, and not directed against the employee as an employee, or because of the employment." Minn. Stat. § 176.011, subd. 16 (2014). The assault exception is narrowly construed, and for it to apply the alleged assault must (1) be motivated by personal animosity toward the victim, and (2) arise from circumstances wholly unconnected with the employment. *McGowan*, 527 N.W.2d at 834. Disputed facts surrounding these factors create triable issues. *Fernandez v. Ramsey Cty.*, 495 N.W.2d 859, 863 (Minn. App. 1993).

Respondents argue that the WCA applies in this case because injuries sustained from workplace horseplay are incidental to employment and compensable under the WCA. *See, e.g.*, *Walsh v. Chas. Olson & Sons, Inc.*, 285 Minn. 260, 262, 172 N.W.2d 745, 747 (1969) (holding that the WCA does not bar compensation to an employee injured during working hours where he is a victim, whether participating or innocent, of pranks or horseplay); *Cunning v. City of Hopkins*, 258 Minn. 306, 319, 103 N.W.2d 876, 885 (1960) ("[H]orseplay which is a part of the employment environment, do[es] not justify a denial of compensation [under the WCA]."). Further, respondents rely on *Meintsma v. Loram Maint. of Way, Inc.*, where the supreme court determined that the assault exception did not apply to injuries sustained by an employee from a "birthday spanking" with a paddle because the assault was not motivated by personal animosity, happened during work hours, was a workplace ritual, and was not "wholly unconnected" with the workplace. 684 N.W.2d 434, 439 (Minn. 2004).

The record shows genuine issues of material fact regarding the assault-exception requirements and the district court did not err in denying respondents' motion to find WCA exclusivity. First, while Schaefer initially had a positive relationship with Schultz before

7

the kick, Schaefer testified that Schultz had "personal issues" with both him and his coworker. This, along with the fact that Schultz kicked Schaefer in the groin with steel-toed boots evidences personal animosity. Second, there is conflicting evidence about whether Schultz's kick resulted from the circumstances of employment—i.e., from typical horseplay associated with his employment—or whether it was "wholly unconnected" to the workplace. Schultz recalled at his deposition that Schaefer and his coworker Cowette were both instigating horseplay at work by hitting each other and others in the genital area. Respondents argue that Schultz's kick itself was horseplay as it originated from the horseplay of other workers and from Schaefer and Schultz's earlier interactions. However, even if the earlier activity was horseplay incidental to employment, a factfinder might conclude that forcefully kicking another with a steel-toed boot cannot reasonably constitute workplace horseplay.

Respondents also rely on *McGowan* where the supreme court held that the WCA precluded a director at a homeless shelter from bringing a negligence claim arising out of injuries she sustained when she was sexually assaulted at work by a shelter client. 527 N.W.2d at 833-34. The supreme court reasoned that the sexual assault was covered by the WCA because it resulted solely out of McGowan's activities as a shelter director, which required her to be in an isolated place with a client she never had contact with outside of work. *Id*. at 834. However, we agree with the district court that, unlike in *McGowan*, there is no evidence of a "peculiar hazard" in the egg-manufacturing industry, or in Schaefer's employment, that was a causative factor in Schultz's kick.

8

Because there are genuine issues of fact about whether Schultz's kick was based on personal animosity, and whether the kick was wholly unconnected with Schaefer's employment, the district court did not err in denying summary judgment on grounds of WCA exclusivity.

## II. "Sexual Abuse/Sexual Assault" Claim

Appellant Schaefer argues that the district court erred in denying his motion for summary judgment and granting respondents' motion by ruling that count one—the sexual abuse/sexual assault claim—was time-barred. Because the conduct at issue was not "sexual abuse," triggering the six-year statute of limitations under the delayed-discovery statute, Minn. Stat. § 541.073 (2014), and because Schaefer is time-barred under the two-year limitations period for a battery claim, the district court did not err.

At the outset, respondents argue that Schaefer improperly pleaded "sexual abuse" in his complaint as if it were a statutorily created cause-of-action under the delayed-discovery statute, Minn. Stat. § 541.073, and then, on appeal, Schaefer is trying to reframe count one as a common-law battery claim. Complaints are to be liberally construed "so as to do substantial justice." Minn. R. Civ. P. 8.06; *see Lucas v. Med. Arts Bldg. Co.*, 207 Minn. 380, 383, 291 N.W. 892, 894 (1940). When liberally construed, a complaint is sufficient when it "states facts entitling plaintiff to any relief." *Lucas*, 207 Minn. at 383, 291 N.W. at 894. The district court properly construed Schaefer's complaint as stating a cause of action for battery because the facts used to describe the count included Schultz intentionally kicking Schaefer in the groin without his consent. Schaefer also alleged that

9

the battery was "sexual abuse" as defined by the delayed-discovery statute in order to trigger the longer six-year statute of limitations period.

Generally, a claim of battery faces a two-year statute of limitations. Minn. Stat. § 541.07(1) (2014). Schaefer commenced his lawsuit after this two-year period. However, if the battery meets the definition of "sexual abuse," under Minn. Stat. § 541.073, subd. 1, then a six-year limitations period applies and Schaefer's battery claim is not time-barred.

The parties agree that the district court erred in concluding that the delayed-discovery statute does not apply because the claim was brought under the theory of respondeat superior. This was the holding of *Oelschlager v. Magnuson*, 528 N.W.2d 895, 901 (Minn. App. 1995), *review denied* (Minn. Apr. 27, 1995). However, *Oelschlager* was superseded in 2013 when the legislature amended the delayed-discovery statute to allow a claim under the theory of respondeat superior if commenced within six years. 2013 Minn. Laws ch. 88, § 1, at 728 (codified as amended at Minn. Stat. § 541.073, subd. 4 (2014)). Further, the delayed-discovery statute retroactively applies to actions that were not time-barred before May 25, 2013. *Id.* at 729. Even though the district court erred on this point, this does not end our analysis, as summary judgment can be affirmed if it can be sustained on any ground. *Winkler v. Magnuson*, 539 N.W.2d 821, 828 (Minn. App. 1995), *review denied* (Minn. Feb. 13, 1996).

Having determined that the delayed-discovery statute *could* apply, the question is whether Schultz's conduct meets the statutory definition of "sexual abuse." "Sexual abuse" means conduct described in Minn. Stat. §§ 609.342–.3451 (2014), the criminal-sexual-conduct statutes. Minn. Stat. § 541.073, subd. 1(1). Schultz's conduct could arguably fit

10

the definition of fifth-degree criminal sexual conduct, which criminalizes "nonconsensual sexual contact." Minn. Stat. § 609.3451, subd. 1(1) (2014). This is because "sexual contact" in turn is broadly defined as a nonconsensual act, committed with "sexual or *aggressive* intent," including the "touching of the clothing covering the immediate area of the intimate parts." Minn. Stat. § 609.341, subd. 11 (2014). "Intimate parts" includes the primary genital area and groin. *Id*. at subd. 5.

Here, Schultz admitted to kicking Schaefer in the groin. Whether or not he was engaging in horseplay, there is no dispute that Schultz kicked with "aggressive" intent and that the kick was nonconsensual and over the clothing of Schaefer's intimate parts. Whether the delayed-discovery statute applies, therefore, turns on whether an aggressive kick to the genitals is "touching" under the definition of "sexual contact."

This court construed the word "touching" in the same criminal-sexual-conduct statute in *State v. Ohrtman* and adopted the dictionary meaning of the word: "to put the hand, finger, or other part of the body on, so as to feel; to perceive by the *sense of feeling*." 466 N.W.2d 1, 2-4 (Minn. App. 1991). This court limited the word "touching" to mean "contacts designed primarily to create the sensory feeling of touch." *Id*. at 4.

We agree with respondents that, under *Ohrtman*, Schultz's act was not "touching" and therefore not "sexual contact" or "sexual abuse" because, in this case, the kick to Schaefer's groin was not a contact designed primarily to feel or perceive—it was designed to strike. Schaefer argues for a broader meaning of the word "touching." However, when an appellate court construes the meaning of a statute, and the legislature reenacts the statute without change, this creates the presumption that the legislature adopted the construction.

11

*W. Union Tel. Co. v. Spaeth*, 232 Minn. 128, 131-32, 44 N.W.2d 440, 441-42 (1950). ("The judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it originally.") The legislature has chosen not to change the definition of "sexual contact" in the 15 years since *Ohrtman*, so it has presumptively adopted the construction of "touching" as involving an intent to feel or perceive by the sense of feeling.

Because there is no evidence in the record that Schultz intended to feel or to perceive Schaefer's intimate parts with his foot, the kick was not "touching," and in turn not "sexual contact," and in turn not "sexual abuse." The six-year statute of limitations of the delayed-discovery statute does not apply, and Schaefer's claim is time-barred as it was brought more than two years after the battery.

## III.    Negligence Claims

### *Negligent Retention*

An employer has the duty "to refrain from retaining employees with known dangerous proclivities." *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn. App. 1993), *review denied* (Minn. Apr. 20, 1993). An employer may be liable for negligent retention

> when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment. Liability for this cause of action is not dependent on whether the employee's act was within the scope of employment.

12

*Olson v. First Church of Nazarene*, 661 N.W.2d 254, 264 (Minn. App. 2003) (quotations and citations omitted).

Granting summary judgment in favor of respondents, the district court found that Schaefer produced only "minimal and unsupported evidence" of Schultz's alleged violent conduct, and that there was no genuine issue of material fact regarding whether respondents knew or should have known of Schultz's supposed violent propensities.

Schaefer argues there is a genuine fact issue as to whether respondents knew or should have known of Schultz's supposed violent propensities based on Schultz's allegedly threatening manner at work. Schaefer points to CKS's discipline of Schultz in 2007 when it issued him a warning for "inappropriate conduct" and "potential[]violence in the workplace" issues, stemming from verbal altercations with coworkers. Schaefer also alleges that in 2010 or early 2011, Schultz threatened to "kill" Cowette at work. Schaefer claims that Schultz verbally abused coworkers, threw objects in anger and frustration, and made comments suggesting that he thought people in prison should be shot and that he wanted to become a police officer so he could place a "dirty gun" on a person in order to shoot the person. Further, Schaefer alleges that Schultz had a "reputation for violence," and his coworker submitted an unsworn statement to that effect.

But Schaefer did not bring forth evidence to create a genuine fact issue that respondents knew or should have known that Schultz had a propensity for *physical* violence toward others. CKS management and human resources staff knew of Schultz's 2007 incidents involving discipline, but the incidents were strictly verbal altercations and were far removed temporally from Schultz's conduct in 2011. Schultz's other acts of anger and

13

frustration, as well as his errant comments regarding people in the criminal justice system, are not such that would place a reasonable employer on notice of truly violent propensities. Schultz's alleged threat to kill Cowette in 2010 was not reported to management or human resources until June 2012, after the reported kicking incident, and Schaefer did not identify any evidence that respondents should have known about this specific incident before the 2011 kick.

To show that Schultz had a violent propensity known to respondents, Schaefer claims that G.L. told him that Schultz assaulted G.L. at work by throwing her against the wall and placing his hand on her neck, and that he threatened to kill her. But G.L.'s statement is inadmissible hearsay because it is an out-of-court statement that Schaefer offered to prove the truth of the matter asserted: that Schultz assaulted G.L. at work. *See* Minn. R. Evid. 801(c). Hearsay is inadmissible evidence and, like other inadmissible evidence, it must be disregarded on a motion for summary judgment. Minn. R. Evid. 802; *Murphy v. Country House, Inc.*, 307 Minn. 344, 349, 240 N.W.2d 507, 511 (1976). Schaefer cannot point to any hearsay exception that would make this statement admissible.[1] Further, G.L. later denied, albeit in an unsworn statement, that the assault occurred, and Schaefer did not show that respondents had heard this event occurred in the manner he describes so as to place them on notice. Schultz admitted only that he got into an argument with G.L. at work, he punched a door, and G.L. reported the incident. Even if CKS knew

---

[1] At oral argument Schaefer asserted that the statement was admissible as a non-hearsay statement by a party opponent. *See* Minn. R. Evid. 801(d)(2). Schultz is not a party in this lawsuit so the exception does not apply.

14

Schultz punched a door, this does not show that the company was on notice that Schultz would physically harm another coworker.

Finally, Schaefer failed to establish a genuine fact issue as to whether respondents failed to take further action in response to Schultz's behavior before the kick, such as investigating or discharging Schultz. The record evidence shows that CKS had a violence-in-the-workplace policy, and applied it once to warn Schultz in 2007. Schaefer points to respondents' lack of response to the kicking incident, but for respondents to be liable, any preventative action in response to Schultz's supposed violent propensities would have been required before the kick, not after.

In sum, the district court did not err in granting summary judgment in favor of respondents on the negligent-retention claim.

*Negligent Supervision*

> [T]o make out a successful claim for negligent supervision, the plaintiff must prove (1) the employee's conduct was foreseeable; and (2) the employer failed to exercise ordinary care when supervising the employee. Therefore, to succeed on a claim of either negligence or negligent supervision, a plaintiff must prove that the risk in question was foreseeable. Whether a risk is foreseeable is a legal question that must be decided by the district court before submitting a case to a jury. In the context of negligence and negligent supervision claims, foreseeability means a level of probability which would lead a prudent person to take effective precautions. In determining whether a danger is foreseeable, courts look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility.

*Doe 175 ex rel. Doe 175 v. Columbia Heights Sch. Dist.*, 873 N.W.2d 352, 359-60 (Minn. App. 2016) (quotations and citations omitted).

15

Because Schaefer did not create a genuine issue of material fact as to whether respondents knew or should have known of Schultz's supposed tendency towards physical violence, he cannot show as a matter of law that Schultz's action of kicking him was foreseeable under a negligent-supervision claim. Schaefer's specific allegations of Schultz's behavior before the kick show verbally abusive behavior, but not physical violence. Evidence that an employee committed prior physical violence is not necessary to show that future physical violence was foreseeable. However, in this case, the nature of Schultz's past behavior (verbal abuse, throwing objects, hitting a door and having a "short fuse") only placed the risk of physical violence within the realm of conceivable possibility—it did not make physical violence "objectively reasonable to expect," as required for liability.

Further, Schaefer cannot show that Schultz's kick was committed within the scope of his employment, as required under a negligent-supervision claim. *Olson*, 661 N.W.2d at 264. Intentional torts are within the "scope of employment" and the employer may be held liable when (1) "the source of the attack is related to the duties of the employee" and (2) "the assault occurs within work-related limits of time and place." *Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999). Here, there is no dispute that the kick occurred during work hours at CKS. As for the first requirement, an intentional tort of assault or battery is within the scope of employment where its cause was related to the conduct of the employee's work, or where the tort is a "well-known hazard" because of the nature of employment. *See, e.g.*, *Lange v. Nat'l Biscuit Co.*, 297 Minn. 399, 400-01, 404, 211 N.W.2d 783, 784, 786 (1973) (holding an assault was within the scope

16

of employment when the initial argument precipitating the assault was work related); *Fahrendorff*, 597 N.W.2d at 910-11 (finding a genuine issue of fact of whether an assault was within the scope of employment where an affidavit states sexual abuse is a well-known hazard in the field of employment). Here, prior to the kick, Schaefer and Schultz were standing around at work, there was no work-related argument or conduct that precipitated the battery, and there is no evidence that workplace assaults or batteries are a "well-known hazard" at CKS specifically or food-processing plants generally.

Because there is no genuine issue of material fact regarding whether Schultz's kick was foreseeable, and Schaefer has not presented evidence to show that the kick was in the scope of Schultz's employment, the district court did not err in granting summary judgment in favor of respondents on the negligent supervision claim.

## IV. Whistleblower Claim

The Minnesota Whistleblower Act prohibits retaliation against an employee who, in good faith, reports a violation or suspected violation of any federal or state law to an employer. Minn. Stat. § 181.932, subd. 1(1) (2014); *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. App. 2001), *review denied* (Minn. May 15, 2001). In Minnesota, whistleblower cases are analyzed under the three-part burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). *Cokley*, 623 N.W.2d at 630. First, the employee has the initial burden to establish a prima facie case. *Id*. Second, the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason for its action. *Id*. Third, the employee may demonstrate that the employer's articulated reasons are pretextual. *Id*. To establish a prima facie case of

17

retaliation, Schaefer must show that he engaged in statutorily-protected conduct, that respondents took adverse employment action against him, and a causal connection between the two exists. *Id.*

The district court concluded that Schaefer failed to present evidence to create genuine issues of facts as to whether there was a causal connection between Schaefer's report of Schultz's kick and an adverse employment action, or whether CKS's reasons for its adverse action were a pretext for retaliation.

Schaefer argues that there are genuine fact issues regarding (1) causation because of the temporal proximity between his reports and his discipline and discharge and (2) pretext because Schaefer submitted evidence showing that CKS's stated reasons for its discipline and discharge were false. We disagree.

As for causation, "an employee may demonstrate a causal connection by circumstantial evidence that justifies an inference of retaliatory motive." *Id.* at 632. This may be shown when "the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 445 (Minn. 1983). In *Hubbard*, the supreme court found an inference of retaliatory motive where the plaintiff was discharged two days after the protected activity. *Id.* Unless "very close" in time, mere temporal proximity is not sufficient to create a genuine issue of fact regarding causation. *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 1511 (2001) (20-month period between filing of discrimination complaint and alleged adverse employment action does not suggest causality to show prima facie case of retaliation under Title VII); *Freeman v.*

18

*Ace Tel. Ass'n.*, 467 F.3d 695, 697 (8th Cir. 2006) (three-week time period insufficient to establish causation); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (two-week interval "barely" sufficient to establish causation in a retaliation claim).[2] Furthermore, intervening events can undermine any inference of a causal connection based on temporal proximity. *See, e.g.*, *Freeman*, 467 F.3d at 698 (determining that employee's continued sexual relationship with another employee after lying to the board of directors and promising to end the relationship was intervening event eroding an inference of retaliation).

Schaefer argues that there is a genuine issue of fact regarding causation because his supervisor issued him work-performance warnings three months after he reported the kick in November of 2011. The record demonstrates, though, that Schaefer spoke to human resources after Cowette reported the kick in June 2012. By June 2012, Schaefer had already received performance-related warnings. But, even assuming Schaefer reported the kick in 2011, the three-month period between the report and the supposed adverse actions of his supervisor's warnings is too long to imply a retaliatory motive. Further, Schaefer's absenteeism and poor performance were intervening events between the reported kick and his discharge, eroding any inference of retaliation.

---

[2] Minnesota appellate courts have previously relied on federal court applications of Title VII and the federal Whistleblower Protection Act. *Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 227 (Minn. 2010); *Wayne v. MasterShield, Inc.*, 597 N.W.2d 917, 921 (Minn. App. 1999), *review denied* (Minn. Oct. 21, 1999). Because Minnesota Whistleblower Act claims are analyzed under tests created by federal courts, we give weight to federal case law here.

Schaefer relies on *Tretter v. Liquipak Int'l, Inc.*, arguing that this court has held causation to be established when an employer's adverse action was three months after a complaint. 356 N.W.2d 713, 715 (Minn. App. 1984). But *Tretter* is distinguishable because additional facts there showed causation and a retaliatory motive: after the complaint of harassment, the plaintiff was the only person fired with 11-years seniority and was, by all accounts, an excellent employee. *Id*. at 714-15.

Even if Schaefer had made a prima facie case, the district court did not err in determining that Schaefer could not show that respondents' reasons for terminating Schaefer were pretextual under *McDonnell Douglas*. Respondents met their burden of showing a non-retaliatory reason by stating that Schaefer had been issued warnings, and he was ultimately discharged for being late seven times and suspended for three warnings.

Schaefer argues that these reasons are pretextual. An employee may show pretext for retaliation by demonstrating that the "employer's proffered explanation is unworthy of credence." *Hamblin v. Alliant Techsystems, Inc*., 636 N.W.2d 150, 153 (Minn. App. 2001), *review denied* (Minn. Feb. 19, 2002). Schaefer claims that he created a genuine issue of fact by providing the district court with evidence that CKS's reasons for his discharge were false. For example, he disputes the underlying facts leading up to his various performance warnings by his supervisor, and argues that he was not actually late for work when he failed to show up 15 minutes early to stretch and put on equipment. But when inquiring into whether respondents' stated reasons were pretextual, the issue is not whether Schaefer actually engaged in the alleged misconduct, but whether CKS had a genuine belief that he did. *Harvey v. Anheuser-Bush, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (stating that when

20

examining pretext, a court's inquiry is limited to whether the employer gave an honest explanation of its behavior).

The record shows that CKS had an honest belief that Schaefer was late for his shifts. The plant superintendent testified that everyone at the plant was expected to show up 15 minutes early to do stretches and put on equipment and that it is a violation of policy not to do so. CKS's policy handbook confirms that employees are expected to clock in up to 15 minutes early for putting on equipment. Further, Schaefer's argument that he was singled out for discipline is weakened by his frequent absenteeism going back years prior to these events. Schaefer produced insufficient evidence to support his claim that he was treated differently from other similarly situated employees in terms of the attendance policy. Further, the plant superintendent remembered disciplining one employee for failing to show up 15 minutes before the start of the employee's shift.

Schaefer also did not present evidence showing his direct supervisor's warnings were retaliatory in motive. When asked why he thought his supervisor was issuing him the warnings he replied, "I have no idea. I can't say why . . . . But it seemed like she was trying to shove me out the door." Schaefer also alleged that Schultz is "well connected" at the plant through family members and that Schaefer's direct supervisor was trying to impress the plant superintendent when issuing him warnings. Schaefer offered mere speculation, which "without some concrete evidence, is not enough to avoid summary judgment." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008).

Because respondents' proffered explanations for discharging Schaefer are not "unworthy of credence," there is no genuine issue of fact regarding the pretext issue and the district court was correct in granting summary judgment in favor of respondents.

## V. Punitive Damages

Schaefer would be entitled to punitive damages if he could show by "clear and convincing evidence that the acts of [respondents] show deliberate disregard for the rights or safety of others." Minn. Stat § 549.20, subd. 1 (2014). But, the district court properly granted summary judgment on all counts in favor of respondents—including negligent retention and negligent supervision—and there is no genuine issue of material fact as to whether respondents' alleged actions met the higher recklessness standard of the punitive damages statute requiring the creation of a "high probability of injury to the rights or safety of others." *Id*. Therefore, the district court did not err by granting summary judgment on the punitive damages claim.

## VI. The District Court's Statement of Facts

On related appeal, respondents argue that the district court erred in concluding that the material facts "may indicate" that the kick to Schaefer's groin by Schultz was "aggressive and nonconsensual sexual contact."

"After an appeal has been filed, respondent may obtain review of a judgment or order entered in the same underlying action that may adversely affect respondent." Minn. R. Civ. App. P. 106. However, the rule does not permit review of an "interstitial finding of fact that results in a judgment favorable to the respondent." *Johnson v. Am. Econ. Ins. Co.*, 419 N.W.2d 126, 128 n.1 (Minn. App. 1988).

22

Because the district court ruled in favor of respondents in regard to the battery claim, and the district court stated only that the evidence "may indicate" a fact, the rule does not permit us to review an issue that does not adversely affect respondents.

Finally, because the district court properly dismissed all claims, we do not reach the issue of whether Cargill Inc. was a proper defendant.

**Affirmed.**